IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI

IN RE:  WILLIAM AND SUSAN WATKINS                    NO. 24-02223-JAW

COMMUNITY BANK OF MISSISSIPPI                                         MOVANT

VS.

WILLIAM AND SUSAN WATKINS, DEBTORS
AND EILEEN N. SHAFFER, TRUSTEE                          RESPONDENTS

## MOTION TO ABANDON COLLATERAL AND LIFT STAY

Community Bank of Mississippi ("Bank") brings this motion to abandon collateral pursuant to 11 U.S.C. § 554 and to lift and terminate the automatic stay of 11 U.S.C. § 362 and for cause would show as follows:

      1.      The Debtors are indebted to the Bank under six Promissory Notes, copies of which are attached as Exhibit "A". As of October 18, 2024, the combined payoffs total $102,679.71.

      2.      As collateral for the indebtedness due, the Debtors pledged to the Bank a 2021 Polaris ATV, a 2017 Ford Fusion, a 2017 Ford Expedition, a 2021 Chrysler 300, a 2014 Jeep Wrangler and a 2020 Dodge Ram, as evidenced by the Security Agreements and Certificates of Title attached as collective Exhibit "B". The present value of the Bank's collateral is unknown however the Bank believes that the debt due exceeds the value.

      3.      The Debtors have failed to provide Bank with adequate protection as required by 11 U.S.C. § 362 and § 363 and have defaulted on the payments due to the Bank. There is no equity in the Bank's collateral for the benefit of the Debtors or the Estate. The Debtor's intent is to surrender the Bank's collateral. The Bank presently has possession of its collateral and

requests that the 14 day stay under Bankruptcy Rule 4001(a)(3) be waived to allow the Bank to immediately liquidate its collateral.

WHEREFORE, PREMISES CONSIDERED, Community Bank of Mississippi requests that this Court abandon Bank's collateral pursuant to 11 U.S.C. § 554 and lift and terminate the automatic stay of 11 U.S.C. § 362 to allow the Bank to exercise its remedies and grant such other relief as is necessary under the circumstances.

DATED: October 18, 2024.

**COMMUNITY BANK OF MISSISSIPPI**

By: /s/ Jeff Rawlings
Its Attorney

## CERTIFICATE OF SERVICE

I served a copy of the foregoing on October 18, 2024 by mail upon William and Susan Watkins, 1415 Brecon Drive, Jackson, MS 39211 and via the ECF notification service upon Eileen N. Shaffer, Bryant D. Guy and the Office of the U. S. Trustee.

/s/ Jeff Rawlings
Jeff Rawlings

Jeff Rawlings
P.O. Box 1789
Madison, MS 39130-1789
601-898-1180
jeff@rawlingsmacinnis.net
MSB # 4642



 **COMMUNITY BANK**

EXHIBIT A

## PROMISSORY NOTE

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $20,172.52 | 01-04-2021 | 01-12-2025 | | 6D / 007 | | DE | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "****" has been omitted due to text length limitations.

**Borrower:**  William Scott Watkins
112 McMillan Circle
Philadelphia, MS 39350-8110

**Lender:**  Community Bank of Mississippi
Forest Office
323 East Third Street
Forest, MS 39074

---

**Principal Amount: $20,172.52**          **Interest Rate: 9.250%**          **Date of Note: January 4, 2021**

**PROMISE TO PAY.** I ("Borrower") promise to pay to Community Bank of Mississippi ("Lender"), or order, in lawful money of the United States of America, the principal amount of Twenty Thousand One Hundred Seventy-two & 52/100 Dollars ($20,172.52), together with interest on the unpaid principal balance from January 4, 2021, calculated as described in the "INTEREST CALCULATION METHOD" paragraph using an interest rate of 9.250% per annum, until paid in full. The interest rate may change under the terms and conditions of the "INTEREST AFTER DEFAULT" section.

**PAYMENT.** I will pay this loan in 47 payments of $505.33 each payment and on irregular last payment estimated at $505.33. My first payment is due February 12, 2021, and all subsequent payments are due on the same day of each month after that. My final payment will be due on January 12, 2025, and will be for all principal and all accrued interest not yet paid. Payments include principal and interest. Unless otherwise agreed or required by applicable law, payments will be applied to any interest; then to principal; then to any late charges; and then to any other charges. I will pay Lender at Lender's address shown above or at such other place as Lender may designate in writing.

**INTEREST CALCULATION METHOD.** Interest on this Note is computed on a 365/365 basis; that is, by applying the ratio of the interest rate over the number of days in a year (365 for all years, including leap years), multiplied by the outstanding principal balance, multiplied by the actual number of days the principal balance is outstanding. All interest payable under this Note is computed using this method.

**PREPAYMENT; MINIMUM INTEREST CHARGE.** I agree that all loan fees and other prepaid finance charges are earned fully as of the date of the loan and will not be refunded to me upon early payment (whether voluntary or as a result of default), except as otherwise required by law.  In any event, even upon full prepayment of this Note, I understand that Lender is entitled to a minimum interest charge of $10.00. Other than my obligation to pay any minimum interest charge, I may pay without penalty all or a portion of the amount owed earlier than it is due. Early payments will not, unless agreed to by Lender in writing, relieve me of my obligation to continue to make payments under the payment schedule. Rather, early payments will reduce the principal balance due and may result in my making fewer payments. I agree not to send Lender payments marked "paid in full", "without recourse", or similar language. If I send such a payment, Lender may accept it without losing any of Lender's rights under this Note, and I will remain obligated to pay any further amount owed to Lender. All written communications concerning disputed amounts, including any check or other payment instrument that indicates that the payment constitutes "payment in full" of the amount owed or that is tendered with other conditions or limitations or as full satisfaction of a disputed amount must be mailed or delivered to: Community Bank of Mississippi, 323 East Third Street Forest, MS 39074.

**LATE CHARGE.** If a payment is 16 days or more late, I will be charged 4.000% of the unpaid portion of the regularly scheduled payment or $5.00, whichever is greater. However, in no event will the late charge exceed $50.00.

**INTEREST AFTER DEFAULT.** Upon maturity, whether scheduled or accelerated by Lender because of my default, the total sum due under this Note will continue to accrue interest at the interest rate under this Note.

**DEFAULT.** I will be in default under this Note if any of the following happen:

**Payment Default.** I fail to make any payment when due under this Note.

**Break Other Promises.** I break any promise made to Lender or fail to perform promptly at the time and strictly in the manner provided in this Note or in any agreement related to this Note, or in any other agreement or loan I have with Lender.

**False Statements.** Any representation or statement made or furnished to Lender by me or on my behalf under this Note or the related documents is false or misleading in any material respect, either now or at the time made or furnished.

**Death or Insolvency.** Any Borrower dies or becomes insolvent; a receiver is appointed for any part of my property; I make an assignment for the benefit of creditors; or any proceeding is commenced either by me or against me under any bankruptcy or insolvency laws.

**Taking of the Property.** Any creditor or governmental agency tries to take any of the property or any other of my property in which Lender has a lien. This includes taking of, garnishing of or levying on my accounts with Lender. However, if I dispute in good faith whether the claim on which the taking of the property is based is valid or reasonable, and if I give Lender written notice of the claim and furnish Lender with monies or a surety bond satisfactory to Lender to satisfy the claim, then this default provision will not apply.

**Defective Collateralization.** This Note or any of the related documents ceases to be in full force and effect (including failure of any collateral document to create a valid and perfected security interest or lien) at any time and for any reason.

**Collateral Damage or Loss.** Any collateral securing this Note is lost, stolen, substantially damaged or destroyed and the loss, theft, substantial damage or destruction is not covered by insurance.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any guarantor, endorser, surety, or accommodation party of any of the indebtedness or any guarantor, endorser, surety, or accommodation party dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any guaranty of the indebtedness evidenced by this Note.

**Insecurity.** Lender in good faith believes itself insecure.

**LENDER'S RIGHTS.** Upon default, Lender may declare the entire unpaid principal balance under this Note and all accrued unpaid interest immediately due, and then I will pay that amount.

**ATTORNEYS' FEES; EXPENSES.** Lender may hire or pay someone else to help collect this Note if I do not pay. I will pay Lender that amount. This includes, subject to any limits under applicable law, Lender's attorneys' fees and Lender's legal expenses, whether or not there is a lawsuit, including attorneys' fees, expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), and appeals. If not prohibited by applicable law, I also will pay any court costs, in addition to all other sums provided by law.

**GOVERNING LAW.** This Note will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of Mississippi without regard to its conflicts of law provisions. This Note has been accepted by Lender in the State of Mississippi.

**CHOICE OF VENUE.** If there is a lawsuit, I agree upon Lender's request to submit to the jurisdiction of the courts of Rankin County, State of Mississippi.

**RIGHT OF SETOFF.** To the extent permitted by applicable law, Lender has the full right of setoff in all my accounts with Lender (whether checking, savings, or some other account). This includes all accounts I hold jointly with someone else and all accounts I may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. I authorize Lender, to the extent permitted by applicable law, to charge or setoff all sums owing on the indebtedness against any and all such accounts, and, at Lender's option, to administratively freeze all such accounts to allow Lender to protect Lender's charge and setoff rights provided in this paragraph.

In addition to Lender's right of setoff, I hereby grant to Lender a security interest in all of my accounts with Lender (whether checking, savings or some other account, including all accounts I hold jointly with someone else and all accounts I may open in the future) to cover any debt I owe Lender, of whatever type, whether I am a borrower, guarantor or otherwise. This security interest may not apply to my account if (a) it is an

# PROMISSORY NOTE
## (Continued)

Loan No:                                                                      Page 2

IRA or tax-deferred Keogh Retirement Account, (b) the debt is created by a consumer credit transaction under a credit card plan, or (c) my right of withdrawal arises only in a representative capacity.

**COLLATERAL.** I acknowledge this Note is secured by the following collateral described in the security instrument listed herein:

(A)  a Consumer Security Agreement dated January 4, 2021 made and executed between William Scott Watkins and Lender on collateral described as a motor vehicle.

**SUCCESSOR INTERESTS.** The terms of this Note shall be binding upon me, and upon my heirs, personal representatives, successors and assigns, and shall inure to the benefit of Lender and its successors and assigns.

**GENERAL PROVISIONS.** If any part of this Note cannot be enforced, this fact will not affect the rest of the Note. Lender may delay or forgo enforcing any of its rights or remedies under this Note without losing them. I and any other person who signs, guarantees or endorses this Note, to the extent allowed by law, waive presentment, demand for payment, and notice of dishonor. Upon any change in the terms of this Note, and unless otherwise expressly stated in writing, no party who signs this Note, whether as maker, guarantor, accommodation maker or endorser, shall be released from liability. All such parties agree that Lender may renew or extend (repeatedly and for any length of time) this loan or release any party or guarantor or collateral; or impair, fail to realize upon or perfect Lender's security interest in the collateral. All such parties also agree that Lender may modify this loan without the consent of or notice to anyone other than the party with whom the modification is made. The obligations under this Note are joint and several. This means that the words "I", "me", and "my" mean each and all of the persons signing below.

PRIOR TO SIGNING THIS NOTE, I READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS NOTE. I AGREE TO THE TERMS OF THE NOTE.

I ACKNOWLEDGE RECEIPT OF A COMPLETED COPY OF THIS PROMISSORY NOTE.

**NOTICE:** ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF.  RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.

**BORROWER:**

X _____
William Scott Watkins





# PROMISSORY NOTE

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $48,315.59 | 07-29-2021 | 08-11-2026 | | 6D / 007 | | DE | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "****" has been omitted due to text length limitations.

**Borrower:** William Scott Watkins
112 McMillian Circle
Philadelphia, MS 39350-8110

**Lender:** Community Bank of Mississippi
Forest Office
323 East Third Street
Forest, MS 39074

**Principal Amount: $48,315.59**      **Interest Rate: 9.250%**      **Date of Note: July 29, 2021**

**PROMISE TO PAY.** I ("Borrower") promise to pay to Community Bank of Mississippi ("Lender"), or order, in lawful money of the United States of America, the principal amount of Forty-eight Thousand Three Hundred Fifteen & 59/100 Dollars ($48,315.59), together with interest on the unpaid principal balance from July 29, 2021, calculated as described in the "INTEREST CALCULATION METHOD" paragraph using an interest rate of 9.250% per annum, until paid in full. The interest rate may change under the terms and conditions of the "INTEREST AFTER DEFAULT" section.

**PAYMENT.** I will pay this loan in 59 payments of $1,012.27 each payment and an irregular last payment estimated at $1,012.16. My first payment is due September 11, 2021, and all subsequent payments are due on the same day of each month after that. My final payment will be due on August 11, 2026, and will be for all principal and all accrued interest not yet paid. Payments include principal and interest. Unless otherwise agreed or required by applicable law, payments will be applied to any interest; then to principal; then to any late charges; and then to any other charges. I will pay Lender at Lender's address shown above or at such other place as Lender may designate in writing.

**INTEREST CALCULATION METHOD.** Interest on this Note is computed on a 365/365 basis; that is, by applying the ratio of the interest rate over the number of days in a year (365 for all years, including leap years), multiplied by the outstanding principal balance, multiplied by the actual number of days the principal balance is outstanding. All interest payable under this Note is computed using this method.

**PREPAYMENT; MINIMUM INTEREST CHARGE.** I agree that all loan fees and other prepaid finance charges are earned fully as of the date of the loan and will not be refunded to me upon early payment (whether voluntary or as a result of default), except as otherwise required by law. In any event, even upon full prepayment of this Note, I understand that Lender is entitled to a minimum interest charge of $10.00. Other than my obligation to pay any minimum interest charge, I may pay without penalty all or a portion of the amount owed earlier than it is due. Early payments will not, unless agreed to by Lender in writing, relieve me of my obligation to continue to make payments under the payment schedule. Rather, early payments will reduce the principal balance due and may result in my making fewer payments. I agree not to send Lender payments marked "paid in full", "without recourse", or similar language. If I send such a payment, Lender may accept it without losing any of Lender's rights under this Note, and I will remain obligated to pay any further amount owed to Lender. All written communications concerning disputed amounts, including any check or other payment instrument that indicates that the payment constitutes "payment in full" of the amount owed or that is tendered with other conditions or limitations or as full satisfaction of a disputed amount must be mailed or delivered to: Community Bank of Mississippi, 323 East Third Street Forest, MS 39074.

**LATE CHARGE.** If a payment is 16 days or more late, I will be charged 4.000% of the unpaid portion of the regularly scheduled payment or $5.00, whichever is greater.

**INTEREST AFTER DEFAULT.** Upon maturity, whether scheduled or accelerated by Lender because of my default, the total sum due under this Note will continue to accrue interest at the interest rate under this Note.

**DEFAULT.** I will be in default under this Note if any of the following happen:

    **Payment Default.** I fail to make any payment when due under this Note.

    **Break Other Promises.** I break any promise made to Lender or fail to perform promptly at the time and strictly in the manner provided in this Note or in any agreement related to this Note, or in any other agreement or loan I have with Lender.

    **False Statements.** Any representation or statement made or furnished to Lender by me or on my behalf under this Note or the related documents is false or misleading in any material respect, either now or at the time made or furnished.

    **Death or Insolvency.** Any Borrower dies or becomes insolvent; a receiver is appointed for any part of my property; I make an assignment for the benefit of creditors; or any proceeding is commenced either by me or against me under any bankruptcy or insolvency laws.

    **Taking of the Property.** Any creditor or governmental agency tries to take any of the property or any other of my property in which Lender has a lien. This includes taking of, garnishing of or levying on my accounts with Lender. However, if I dispute in good faith whether the claim on which the taking of the property is based is valid or reasonable, and if I give Lender written notice of the claim and furnish Lender with monies or a surety bond satisfactory to Lender to satisfy the claim, then this default provision will not apply.

    **Defective Collateralization.** This Note or any of the related documents ceases to be in full force and effect (including failure of any collateral document to create a valid and perfected security interest or lien) at any time and for any reason.

    **Collateral Damage or Loss.** Any collateral securing this Note is lost, stolen, substantially damaged or destroyed and the loss, theft, substantial damage or destruction is not covered by insurance.

    **Events Affecting Guarantor.** Any of the preceding events occurs with respect to any guarantor, endorser, surety, or accommodation party of any of the indebtedness or any guarantor, endorser, surety, or accommodation party dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any guaranty of the indebtedness evidenced by this Note.

# PROMISSORY NOTE
## (Continued)

Loan No:                                                                                                    Page 2

IRA or tax-deferred Keogh Retirement Account, (b) the debt is created by a consumer credit transaction under a credit card plan, or (c) my right of withdrawal arises only in a representative capacity.

**COLLATERAL.** I acknowledge this Note is secured by the following collateral described in the security instruments listed herein:

    (A)  a Consumer Security Agreement dated July 29, 2021 made and executed between Crystal A Jim and Lender on collateral described as a motor vehicle.

    (B)  a Consumer Security Agreement dated July 29, 2021 made and executed between William Watkins and Lender on collateral described as a motor vehicle.

**SUCCESSOR INTERESTS.**  The terms of this Note shall be binding upon me, and upon my heirs, personal representatives, successors and assigns, and shall inure to the benefit of Lender and its successors and assigns.

**GENERAL PROVISIONS.**  If any part of this Note cannot be enforced, this fact will not affect the rest of the Note.  Lender may delay or forgo enforcing any of its rights or remedies under this Note without losing them.  I and any other person who signs, guarantees or endorses this Note, to the extent allowed by law, waive presentment, demand for payment, and notice of dishonor.  Upon any change in the terms of this Note, and unless otherwise expressly stated in writing, no party who signs this Note, whether as maker, guarantor, accommodation maker or endorser, shall be released from liability.  All such parties agree that Lender may renew or extend (repeatedly and for any length of time) this loan or release any party or guarantor or collateral; or impair, fail to realize upon or perfect Lender's security interest in the collateral.  All such parties also agree that Lender may modify this loan without the consent of or notice to anyone other than the party with whom the modification is made.  The obligations under this Note are joint and several.  This means that the words "I", "me", and "my" mean each and all of the persons signing below.

PRIOR TO SIGNING THIS NOTE, I READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS NOTE. I AGREE TO THE TERMS OF THE NOTE.

I ACKNOWLEDGE RECEIPT OF A COMPLETED COPY OF THIS PROMISSORY NOTE.

**NOTICE:  ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF.  RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.**

**BORROWER:**

x _____
William Scott Watkins

LaserPro, Ver. 2.1.1.0.222  Copr. Finastra USA Corporation 1997, 2021.  All Rights Reserved.  - MS  M:\CFI\LPL\D20.FC  TR-245343  PR-209



COMMUNITY BANK

# PROMISSORY NOTE

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $11,129.24 | 04-12-2021 | 04-15-2025 | | 6C / 007 | | DE | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item. Any item above containing "***" has been omitted due to text length limitations.

**Borrower:** William Scott Watkins
112 McMillian Circle
Philadelphia, MS 39350-8110

**Lender:** Community Bank of Mississippi
Forest Office
323 East Third Street
Forest, MS 39074

**Principal Amount: $11,129.24** **Interest Rate: 9.500%** **Date of Note: April 12, 2021**

**PROMISE TO PAY.** I ("Borrower") promise to pay to Community Bank of Mississippi ("Lender"), or order, in lawful money of the United States of America, the principal amount of Eleven Thousand One Hundred Twenty-nine & 24/100 Dollars ($11,129.24), together with interest on the unpaid principal balance from April 12, 2021, calculated as described in the "INTEREST CALCULATION METHOD" paragraph using an interest rate of 9.500% per annum, until paid in full. The interest rate may change under the terms and conditions of the "INTEREST AFTER DEFAULT" section.

**PAYMENT.** I will pay this loan in 47 payments of $279.87 each payment and an irregular last payment estimated at $279.77. My first payment is due May 15, 2021, and all subsequent payments are due on the same day of each month after that. My final payment will be due on April 15, 2025, and will be for all principal and all accrued interest not yet paid. Payments include principal and interest. Unless otherwise agreed or required by applicable law, payments will be applied to any interest; then to principal; then to any late charges; and then to any other charges. I will pay Lender at Lender's address shown above or at such other place as Lender may designate in writing.

**INTEREST CALCULATION METHOD.** Interest on this Note is computed on a 365/365 basis; that is, by applying the ratio of the interest rate over the number of days in a year (365 for all years, including leap years), multiplied by the outstanding principal balance, multiplied by the actual number of days the principal balance is outstanding. All interest payable under this Note is computed using this method.

**PREPAYMENT; MINIMUM INTEREST CHARGE.** I agree that all loan fees and other prepaid finance charges are earned fully as of the date of the loan and will not be refunded to me upon early payment (whether voluntary or as a result of default), except as otherwise required by law. In any event, even upon full prepayment of this Note, I understand that Lender is entitled to a minimum interest charge of $10.00. Other than my obligation to pay any minimum interest charge, I may pay without penalty all or a portion of the amount owed earlier than it is due. Early payments will not, unless agreed to by Lender in writing, relieve me of my obligation to continue to make payments under the payment schedule. Rather, early payments will reduce the principal balance due and may result in my making fewer payments. I agree not to send Lender payments marked "paid in full", "without recourse", or similar language. If I send such a payment, Lender may accept it without losing any of Lender's rights under this Note, and I will remain obligated to pay any further amount owed to Lender. All written communications concerning disputed amounts, including any check or other payment instrument that indicates that the payment constitutes "payment in full" of the amount owed or that is tendered with other conditions or limitations or as full satisfaction of a disputed amount must be mailed or delivered to: Community Bank of Mississippi, 323 East Third Street Forest, MS 39074.

**LATE CHARGE.** If a payment is 16 days or more late, I will be charged 4.000% of the unpaid portion of the regularly scheduled payment or $5.00, whichever is greater. However, in no event will the late charge exceed $50.00.

**INTEREST AFTER DEFAULT.** Upon maturity, whether scheduled or accelerated by Lender because of my default, the total sum due under this Note will continue to accrue interest at the interest rate under this Note.

**DEFAULT.** I will be in default under this Note if any of the following happen:

**Payment Default.** I fail to make any payment when due under this Note.

**Break Other Promises.** I break any promise made to Lender or fail to perform promptly at the time and strictly in the manner provided in this Note or in any agreement related to this Note, or in any other agreement or loan I have with Lender.

**False Statements.** Any representation or statement made or furnished to Lender by me or on my behalf under this Note or the related documents is false or misleading in any material respect, either now or at the time made or furnished.

**Death or Insolvency.** Any Borrower dies or becomes insolvent; a receiver is appointed for any part of my property; I make an assignment for the benefit of creditors; or any proceeding is commenced either by me or against me under any bankruptcy or insolvency laws.

**Taking of the Property.** Any creditor or governmental agency tries to take any of the property or any other of my property in which Lender has a lien. This includes taking of, garnishing of or levying on my accounts with Lender. However, if I dispute in good faith whether the claim on which the taking of the property is based is valid or reasonable, and if I give Lender written notice of the claim and furnish Lender with monies or a surety bond satisfactory to Lender to satisfy the claim, then this default provision will not apply.

**Defective Collateralization.** This Note or any of the related documents ceases to be in full force and effect (including failure of any collateral document to create a valid and perfected security interest or lien) at any time and for any reason.

**Collateral Damage or Loss.** Any collateral securing this Note is lost, stolen, substantially damaged or destroyed and the loss, theft, substantial damage or destruction is not covered by insurance.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any guarantor, endorser, surety, or accommodation party of any of the indebtedness or any guarantor, endorser, surety, or accommodation party dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any guaranty of the indebtedness evidenced by this Note.

**Insecurity.** Lender in good faith believes itself insecure.

**LENDER'S RIGHTS.** Upon default, Lender may declare the entire unpaid principal balance under this Note and all accrued unpaid interest immediately due, and then I will pay that amount.

**ATTORNEYS' FEES; EXPENSES.** Lender may hire or pay someone else to help collect this Note if I do not pay. I will pay Lender that amount. This includes, subject to any limits under applicable law, Lender's attorneys' fees and Lender's legal expenses, whether or not there is a lawsuit, including attorneys' fees, expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), and appeals. If not prohibited by applicable law, I also will pay any court costs, in addition to all other sums provided by law.

**GOVERNING LAW.** This Note will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of Mississippi without regard to its conflicts of law provisions. This Note has been accepted by Lender in the State of Mississippi.

**CHOICE OF VENUE.** If there is a lawsuit, I agree upon Lender's request to submit to the jurisdiction of the courts of Rankin County, State of Mississippi.

**RIGHT OF SETOFF.** To the extent permitted by applicable law, Lender has the full right of setoff in all my accounts with Lender (whether checking, savings, or some other account). This includes all accounts I hold jointly with someone else and all accounts I may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. I authorize Lender, to the extent permitted by applicable law, to charge or setoff all sums owing on the indebtedness against any and all such accounts, and, at Lender's option, to administratively freeze all such accounts to allow Lender to protect Lender's charge and setoff rights provided in this paragraph.

In addition to Lender's right of setoff, I hereby grant to Lender a security interest in all of my accounts with Lender (whether checking, savings or some other account, including all accounts I hold jointly with someone else and all accounts I may open in the future) to cover any debt I owe Lender, of whatever type, whether I am a borrower, guarantor or otherwise. This security interest may not apply to my account if (a) it is an

PROMISSORY NOTE
(Continued)

Loan No:                                                                                          Page 2

IRA or tax-deferred Keogh Retirement Account, (b) the debt is created by a consumer credit transaction under a credit card plan, or (c) my right of withdrawal arises only in a representative capacity.

COLLATERAL. I acknowledge this Note is secured by the following collateral described in the security instrument listed herein:

(A) a Consumer Security Agreement dated April 12, 2021 made and executed between Scott Watkins and Lender on collateral described as a motor vehicle.

SUCCESSOR INTERESTS. The terms of this Note shall be binding upon me, and upon my heirs, personal representatives, successors and assigns, and shall inure to the benefit of Lender and its successors and assigns.

GENERAL PROVISIONS. If any part of this Note cannot be enforced, this fact will not affect the rest of the Note. Lender may delay or forgo enforcing any of its rights or remedies under this Note without losing them. I and any other person who signs, guarantees or endorses this Note, to the extent allowed by law, waive presentment, demand for payment, and notice of dishonor. Upon any change in the terms of this Note, and unless otherwise expressly stated in writing, no party who signs this Note, whether as maker, guarantor, accommodation maker or endorser, shall be released from liability. All such parties agree that Lender may renew or extend (repeatedly and for any length of time) this loan or release any party or guarantor or collateral; or impair, fail to realize upon or perfect Lender's security interest in the collateral. All such parties also agree that Lender may modify this loan without the consent of or notice to anyone other than the party with whom the modification is made. The obligations under this Note are joint and several. This means that the words "I", "me", and "my" mean each and all of the persons signing below.

PRIOR TO SIGNING THIS NOTE, I READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS NOTE. I AGREE TO THE TERMS OF THE NOTE.

I ACKNOWLEDGE RECEIPT OF A COMPLETED COPY OF THIS PROMISSORY NOTE.

NOTICE:  ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF.  RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.

BORROWER:

X _____
William Scott Watkins





✓

COMMUNITY BANK

# PROMISSORY NOTE

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $5,604.24 | 12-01-2021 | 12-15-2023 | | 6D / 007 | | DE | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item. Any item above containing "***" has been omitted due to text length limitations.

**Borrower:** William Scott Watkins
112 McMillan Circle
Philadelphia, MS 39350-8110

**Lender:** Community Bank of Mississippi
Forest Office
323 East Third Street
Forest, MS 39074

**Principal Amount: $5,604.24** **Interest Rate: 8.000%** **Date of Note: December 1, 2021**

**PROMISE TO PAY.** I ("Borrower") promise to pay to Community Bank of Mississippi ("Lender"), or order, in lawful money of the United States of America, the principal amount of Five Thousand Six Hundred Four & 24/100 Dollars ($5,604.24), together with interest on the unpaid principal balance from December 1, 2021, calculated as described in the "INTEREST CALCULATION METHOD" paragraph using an interest rate of 8.000% per annum, until paid in full. The interest rate may change under the terms and conditions of the "INTEREST AFTER DEFAULT" section.

**PAYMENT.** I will pay this loan in 23 payments of $254.23 each payment and an irregular last payment estimated at $254.12. My first payment is due January 15, 2022, and all subsequent payments are due on the same day of each month after that. My final payment will be due on December 15, 2023, and will be for all principal and all accrued interest not yet paid. Payments include principal and interest. Unless otherwise agreed or required by applicable law, payments will be applied to any interest; then to principal; then to any late charges; and then to any other charges. I will pay Lender at Lender's address shown above or at such other place as Lender may designate in writing.

**INTEREST CALCULATION METHOD.** Interest on this Note is computed on a 365/365 basis; that is, by applying the ratio of the interest rate over the number of days in a year (365 for all years, including leap years), multiplied by the outstanding principal balance, multiplied by the actual number of days the principal balance is outstanding. All interest payable under this Note is computed using this method.

**PREPAYMENT; MINIMUM INTEREST CHARGE.** I agree that all loan fees and other prepaid finance charges are earned fully as of the date of the loan and will not be refunded to me upon early payment (whether voluntary or as a result of default), except as otherwise required by law. In any event, even upon full prepayment of this Note, I understand that Lender is entitled to a minimum interest charge of $10.00. Other than my obligation to pay any minimum interest charge, I may pay without penalty all or a portion of the amount owed earlier than it is due. Early payments will not, unless agreed to by Lender in writing, relieve me of my obligation to continue to make payments under the payment schedule. Rather, early payments will reduce the principal balance due and may result in my making fewer payments. I agree not to send Lender payments marked "paid in full", "without recourse", or similar language. If I send such a payment, Lender may accept it without losing any of Lender's rights under this Note, and I will remain obligated to pay any further amount owed to Lender. All written communications concerning disputed amounts, including any check or other payment instrument that indicates that the payment constitutes "payment in full" of the amount owed or that is tendered with other conditions or limitations or as full satisfaction of a disputed amount must be mailed or delivered to: Community Bank of Mississippi, 323 East Third Street Forest, MS 39074.

**LATE CHARGE.** If a payment is 16 days or more late, I will be charged 4.000% of the unpaid portion of the regularly scheduled payment or $5.00, whichever is greater. However, in no event will the late charge exceed $50.00.

**INTEREST AFTER DEFAULT.** Upon maturity, whether scheduled or accelerated by Lender because of my default, the total sum due under this Note will continue to accrue interest at the interest rate under this Note.

**DEFAULT.** I will be in default under this Note if any of the following happen:

**Payment Default.** I fail to make any payment when due under this Note.

**Break Other Promises.** I break any promise made to Lender or fail to perform promptly at the time and strictly in the manner provided in this Note or in any agreement related to this Note, or in any other agreement or loan I have with Lender.

**False Statements.** Any representation or statement made or furnished to Lender by me or on my behalf under this Note or the related documents is false or misleading in any material respect, either now or at the time made or furnished.

**Death or Insolvency.** Any Borrower dies or becomes insolvent; a receiver is appointed for any part of my property; I make an assignment for the benefit of creditors; or any proceeding is commenced either by me or against me under any bankruptcy or insolvency laws.

**Taking of the Property.** Any creditor or governmental agency tries to take any of the property or any other of my property in which Lender has a lien. This includes taking of, garnishing of or levying on my accounts with Lender. However, if I dispute in good faith whether the claim on which the taking of the property is based is valid or reasonable, and if I give Lender written notice of the claim and furnish Lender with monies or a surety bond satisfactory to Lender to satisfy the claim, then this default provision will not apply.

**Defective Collateralization.** This Note or any of the related documents ceases to be in full force and effect (including failure of any collateral document to create a valid and perfected security interest or lien) at any time and for any reason.

**Collateral Damage or Loss.** Any collateral securing this Note is lost, stolen, substantially damaged or destroyed and the loss, theft, substantial damage or destruction is not covered by insurance.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any guarantor, endorser, surety, or accommodation party of any of the indebtedness or any guarantor, endorser, surety, or accommodation party dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any guaranty of the indebtedness evidenced by this Note.

**Insecurity.** Lender in good faith believes itself insecure.

**LENDER'S RIGHTS.** Upon default, Lender may declare the entire unpaid principal balance under this Note and all accrued unpaid interest immediately due, and then I will pay that amount.

**ATTORNEYS' FEES; EXPENSES.** Lender may hire or pay someone else to help collect this Note if I do not pay. I will pay Lender that amount. This includes, subject to any limits under applicable law, Lender's attorneys' fees and Lender's legal expenses, whether or not there is a lawsuit, including attorneys' fees, expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), and appeals. If not prohibited by applicable law, I also will pay any court costs, in addition to all other sums provided by law.

**GOVERNING LAW.** This Note will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of Mississippi without regard to its conflicts of law provisions. This Note has been accepted by Lender in the State of Mississippi.

**CHOICE OF VENUE.** If there is a lawsuit, I agree upon Lender's request to submit to the jurisdiction of the courts of Rankin County, State of Mississippi.

**RIGHT OF SETOFF.** To the extent permitted by applicable law, Lender has the full right of setoff in all my accounts with Lender (whether checking, savings, or some other account). This includes all accounts I hold jointly with someone else and all accounts I may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. I authorize Lender, to the extent permitted by applicable law, to charge or setoff all sums owing on the indebtedness against any and all such accounts, and, at Lender's option, to administratively freeze all such accounts to allow Lender to protect Lender's charge and setoff rights provided in this paragraph.

In addition to Lender's right of setoff, I hereby grant to Lender a security interest in all of my accounts with Lender (whether checking, savings or some other account, including all accounts I hold jointly with someone else and all accounts I may open in the future) to cover any debt I owe Lender, of whatever type, whether I am a borrower, guarantor or otherwise. This security interest may not apply to my account if (a) it is an

## PROMISSORY NOTE
### (Continued)

Loan No:                                                                                  Page 2

IRA or tax-deferred Keogh Retirement Account. (b) the debt is created by a consumer credit transaction under a credit card plan, or (c) my right of withdrawal arises only in a representative capacity.

**COLLATERAL.** I acknowledge this Note is secured by the following collateral described in the security instrument listed herein:

(A) a Consumer Security Agreement dated December 1, 2021 made and executed between Scott Watkins and Lender on collateral described as a motor vehicle.

**SUCCESSOR INTERESTS.** The terms of this Note shall be binding upon me, and upon my heirs, personal representatives, successors and assigns, and shall inure to the benefit of Lender and its successors and assigns.

**GENERAL PROVISIONS.** If any part of this Note cannot be enforced, this fact will not affect the rest of the Note. Lender may delay or forgo enforcing any of its rights or remedies under this Note without losing them. I and any other person who signs, guarantees or endorses this Note, to the extent allowed by law, waive presentment, demand for payment, and notice of dishonor. Upon any change in the terms of this Note, and unless otherwise expressly stated in writing, no party who signs this Note, whether as maker, guarantor, accommodation maker or endorser, shall be released from liability. All such parties agree that Lender may renew or extend (repeatedly and for any length of time) this loan or release any party or guarantor or collateral; or impair, fail to realize upon or perfect Lender's security interest in the collateral. All such parties also agree that Lender may modify this loan without the consent of or notice to anyone other than the party with whom the modification is made. The obligations under this Note are joint and several. This means that the words "I", "me", and "my" mean each and all of the persons signing below.

**PRIOR TO SIGNING THIS NOTE, I READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS NOTE. I AGREE TO THE TERMS OF THE NOTE.**

**I ACKNOWLEDGE RECEIPT OF A COMPLETED COPY OF THIS PROMISSORY NOTE.**

**NOTICE: ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.**

BORROWER:

X _____
William Scott Watkins



 COMMUNITY BANK

# PROMISSORY NOTE

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $4,104.24 | 06-24-2022 | 06-24-2025 | | 60 / 001 | | DE | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "****" has been omitted due to text length limitations.

**Borrower:** William Scott Watkins
112 McMillian Circle
Philadelphia, MS 39350-8110

**Lender:** Community Bank of Mississippi
Forest Office
323 East Third Street
Forest, MS 39074

---

**Principal Amount: $4,104.24**       **Interest Rate: 8.000%**       **Date of Note: June 24, 2022**

**PROMISE TO PAY.** I ("Borrower") promise to pay to Community Bank of Mississippi ("Lender"), or order, in lawful money of the United States of America, the principal amount of Four Thousand One Hundred Four & 24/100 Dollars ($4,104.24), together with interest on the unpaid principal balance from June 24, 2022, calculated as described in the "INTEREST CALCULATION METHOD" paragraph using an interest rate of 8.000% per annum, until paid in full. The interest rate may change under the terms and conditions of the "INTEREST AFTER DEFAULT" section.

**PAYMENT.** I will pay this loan in 35 payments of $128.53 each payment and an irregular last payment estimated at $128.74. My first payment is due July 24, 2022, and all subsequent payments are due on the same day of each month after that. My final payment will be due on June 24, 2025, and will be for all principal and all accrued interest not yet paid. Payments include principal and interest. Unless otherwise agreed or required by applicable law, payments will be applied to any interest; then to principal; then to any late charges; and then to any other charges. I will pay Lender at Lender's address shown above or at such other place as Lender may designate in writing.

**INTEREST CALCULATION METHOD.** Interest on this Note is computed on a 365/365 basis; that is, by applying the ratio of the interest rate over the number of days in a year (365 for all years, including leap years), multiplied by the outstanding principal balance, multiplied by the actual number of days the principal balance is outstanding. All interest payable under this Note is computed using this method.

**PREPAYMENT; MINIMUM INTEREST CHARGE.** I agree that all loan fees and other prepaid finance charges are earned fully as of the date of the loan and will not be refunded to me upon early payment (whether voluntary or as a result of default), except as otherwise required by law. In any event, even upon full prepayment of this Note, I understand that Lender is entitled to a minimum interest charge of $10.00. Other than my obligation to pay any minimum interest charge, I may pay without penalty all or a portion of the amount owed earlier than it is due. Early payments will not, unless agreed to by Lender in writing, relieve me of my obligation to continue to make payments under the payment schedule. Rather, early payments will reduce the principal balance due and may result in my making fewer payments. I agree not to send Lender payments marked "paid in full", "without recourse", or similar language. If I send such a payment, Lender may accept it without losing any of Lender's rights under this Note, and I will remain obligated to pay any further amount owed to Lender. All written communications concerning disputed amounts, including any check or other payment instrument that indicates that the payment constitutes "payment in full" of the amount owed or that is tendered with other conditions or limitations or as full satisfaction of a disputed amount must be mailed or delivered to: Community Bank of Mississippi, 323 East Third Street Forest, MS 39074.

**LATE CHARGE.** If a payment is 16 days or more late, I will be charged 4.000% of the unpaid portion of the regularly scheduled payment or $5.00, whichever is greater. However, in no event will the late charge exceed $50.00.

**INTEREST AFTER DEFAULT.** Upon maturity, whether scheduled or accelerated by Lender because of my default, the total sum due under this Note will continue to accrue interest at the interest rate under this Note.

**DEFAULT.** I will be in default under this Note if any of the following happens:

    **Payment Default.** I fail to make any payment when due under this Note.

    **Break Other Promises.** I break any promise made to Lender or fail to perform promptly at the time and strictly in the manner provided in this Note or in any agreement related to this Note, or in any other agreement or loan I have with Lender.

    **False Statements.** Any representation or statement made or furnished to Lender by me or on my behalf under this Note or the related documents is false or misleading in any material respect, either now or at the time made or furnished.

    **Death or Insolvency.** Any Borrower dies or becomes insolvent; a receiver is appointed for any part of my property; I make an assignment for the benefit of creditors; or any proceeding is commenced either by me or against me under any bankruptcy or insolvency laws.

    **Taking of the Property.** Any creditor or governmental agency tries to take any of the property or any other of my property in which Lender has a lien. This includes taking of, garnishing of or levying on my accounts with Lender. However, if I dispute in good faith whether the claim on which the taking of the property is based is valid or reasonable, and if I give Lender written notice of the claim and furnish Lender with monies or a surety bond satisfactory to Lender to satisfy the claim, then this default provision will not apply.

    **Events Affecting Guarantor.** Any of the preceding events occurs with respect to any guarantor, endorser, surety, or accommodation party of any of the indebtedness or any guarantor, endorser, surety, or accommodation party dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any guaranty of the indebtedness evidenced by this Note.

    **Insecurity.** Lender in good faith believes itself insecure.

**LENDER'S RIGHTS.** Upon default, Lender may declare the entire unpaid principal balance under this Note and all accrued unpaid interest immediately due, and then I will pay that amount.

**ATTORNEYS' FEES; EXPENSES.** Lender may hire or pay someone else to help collect this Note if I do not pay. I will pay Lender that amount. This includes, subject to any limits under applicable law, Lender's attorneys' fees and Lender's legal expenses, whether or not there is a lawsuit, including attorneys' fees, expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), and appeals. If not prohibited by applicable law, I also will pay any court costs, in addition to all other sums provided by law.

**GOVERNING LAW.** This Note will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of Mississippi without regard to its conflicts of law provisions. This Note has been accepted by Lender in the State of Mississippi.

**CHOICE OF VENUE.** If there is a lawsuit, I agree upon Lender's request to submit to the jurisdiction of the courts of Rankin County, State of Mississippi.

**RIGHT OF SETOFF.** To the extent permitted by applicable law, Lender has the full right of setoff in all my accounts with Lender (whether checking, savings, or some other account). This includes all accounts I hold jointly with someone else and all accounts I may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. I authorize Lender, to the extent permitted by applicable law, to charge or setoff all sums owing on the debt against any and all such accounts, and, at Lender's option, to administratively freeze all such accounts to allow Lender to protect Lender's charge and setoff rights provided in this paragraph.

In addition to Lender's right of setoff, I hereby grant to Lender a security interest in all of my accounts with Lender (whether checking, savings or some other account, including all accounts I hold jointly with someone else and all accounts I may open in the future) to secure any and all accounts I may open in the future. This security interest may not apply to my account if (a) it is an IRA or tax-deferred Keogh Retirement Account, (b) the debt is created by a consumer credit transaction under a credit card plan, or (c) my right of withdrawal arises only in a representative capacity.

**COLLATERAL.** This loan is unsecured.

**SUCCESSOR INTERESTS.** The terms of this Note shall be binding upon me, and upon my heirs, personal representatives, successors and

## PROMISSORY NOTE
### (Continued)

Loan No

Page 2

assigns, and shall inure to the benefit of Lender and its successors and assigns.

**GENERAL PROVISIONS.** If any part of this Note cannot be enforced, this fact will not affect the rest of the Note. Lender may delay or forgo enforcing any of its rights or remedies under this Note without losing them. I and any other person who signs, guarantees or endorses this Note, to the extent allowed by law, waive presentment, demand for payment, and notice of dishonor. Upon any change in the terms of this Note, and unless otherwise expressly stated in writing, no party who signs this Note, whether as maker, guarantor, accommodation maker or endorser, shall be released from liability. All such parties agree that Lender may renew or extend (repeatedly and for any length of time) this loan or release any party or guarantor or collateral; or impair, fail to realize upon or perfect Lender's security interest in the collateral. All such parties also agree that Lender may modify this loan without the consent of or notice to anyone other than the party with whom the modification is made. The obligations under this Note are joint and several. This means that the words "I", "me", and "my" mean each and all of the persons signing below.

**PRIOR TO SIGNING THIS NOTE, I READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS NOTE. I AGREE TO THE TERMS OF THE NOTE.**

**I ACKNOWLEDGE RECEIPT OF A COMPLETED COPY OF THIS PROMISSORY NOTE.**

**NOTICE: ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.**

**BORROWER:**

x _____
William Scott Watkins





**COMMUNITY BANK**

## PROMISSORY NOTE

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $72,467.47 | 08-26-2021 | 01-09-2026 | | 6D / 007 | | DE | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "****" has been omitted due to text length limitations.

**Borrower:**  Crystal Ann Jim
112 McMillan Circle
Philadelphia, MS  39350-8110

**Lender:**  Community Bank of Mississippi
Forest Office
323 East Third Street
Forest, MS  39074

**Principal Amount: $72,467.47**        **Interest Rate: 7.250%**        **Date of Note: August 26, 2021**

**PROMISE TO PAY.** I ("Borrower") promise to pay to Community Bank of Mississippi ("Lender"), or order, in lawful money of the United States of America, the principal amount of Seventy-two Thousand Four Hundred Sixty-seven & 47/100 Dollars ($72,467.47), together with interest on the unpaid principal balance from August 26, 2021, calculated as described in the "INTEREST CALCULATION METHOD" paragraph using an interest rate of 7.250% per annum, until paid in full. The interest rate may change under the terms and conditions of the "INTEREST AFTER DEFAULT" section.

**PAYMENT.** I will pay this loan in 51 payments of $1,632.53 each payment and an irregular last payment estimated at $1,632.39. My first payment is due October 9, 2021, and all subsequent payments are due on the same day of each month after that. My final payment will be due on January 9, 2026, and will be for all principal and all accrued interest not yet paid. Payments include principal and interest. Unless otherwise agreed or required by applicable law, payments will be applied to any interest; then to principal; then to any late charges; and then to any other charges. I will pay Lender at Lender's address shown above or at such other place as Lender may designate in writing.

**INTEREST CALCULATION METHOD.** Interest on this Note is computed on a 365/365 basis; that is, by applying the ratio of the interest rate over the number of days in a year (365 for all years, including leap years) multiplied by the outstanding principal balance, multiplied by the actual number of days the principal balance is outstanding. All interest payable under this Note is computed using this method.

**PREPAYMENT; MINIMUM INTEREST CHARGE.** I agree that all loan fees and other prepaid finance charges are earned fully as of the date of the loan and will not be refunded to me upon early payment (whether voluntary or as a result of default), except as otherwise required by law. In any event, even upon full prepayment of this Note, I understand that Lender is entitled to a minimum interest charge of $10.00. Other than my obligation to pay any minimum interest charge, I may pay without penalty all or a portion of the amount owed earlier than it is due. Early payments will not, unless agreed to by Lender in writing, relieve me of my obligation to continue to make payments under the payment schedule. Rather, early payments will reduce the principal balance due and may result in my making fewer payments. I agree not to send Lender payments marked "paid in full", "without recourse", or similar language. If I send such a payment, Lender may accept it without losing any of Lender's rights under this Note, and I will remain obligated to pay any further amount owed to Lender. All written communications concerning disputed amounts, including any check or other payment instrument that indicates that the payment constitutes "payment in full" of the amount owed or that is tendered with other conditions or limitations or as full satisfaction of a disputed amount must be mailed or delivered to:  Community Bank of Mississippi, 323 East Third Street Forest, MS  39074.

**LATE CHARGE.** If a payment is 16 days or more late, I will be charged 4.000% of the unpaid portion of the regularly scheduled payment or $5.00, whichever is greater. However, in no event will the late charge exceed $50.00.

**INTEREST AFTER DEFAULT.** Upon maturity, whether scheduled or accelerated by Lender because of my default, the total sum due under this Note will continue to accrue interest at the interest rate under this Note.

**DEFAULT.** I will be in default under this Note if any of the following happen:

**Payment Default.** I fail to make any payment when due under this Note.

**Break Other Promises.** I break any promise made to Lender or fail to perform promptly at the time and strictly in the manner provided in this Note or in any agreement related to this Note, or in any other agreement or loan I have with Lender.

**False Statements.** Any representation or statement made or furnished to Lender by me or on my behalf under this Note or the related documents is false or misleading in any material respect, either now or at the time made or furnished.

**Death or Insolvency.** Any Borrower dies or becomes insolvent; a receiver is appointed for any part of my property; I make an assignment for the benefit of creditors; or any proceeding is commenced either by me or against me under any bankruptcy or insolvency laws.

**Taking of the Property.** Any creditor or governmental agency tries to take any of the property or any other of my property in which Lender has a lien. This includes taking of, garnishing of or levying on my accounts with Lender. However, if I dispute in good faith whether the claim on which the taking of the property is based is valid or reasonable, and if I give Lender written notice of the claim and furnish Lender with monies or a surety bond satisfactory to Lender to satisfy the claim, then this default provision will not apply.

**Defective Collateralization.** This Note or any of the related documents ceases to be in full force and effect (including failure of any collateral document to create a valid and perfected security interest or lien) at any time and for any reason.

**Collateral Damage or Loss.** Any collateral securing this Note is lost, stolen, substantially damaged or destroyed and the loss, theft, substantial damage or destruction is not covered by insurance.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any guarantor, endorser, surety, or accommodation party of any of the indebtedness or any guarantor, endorser, surety, or accommodation party dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any guaranty of the indebtedness evidenced by this Note.

**Insecurity.** Lender in good faith believes itself insecure.

**LENDER'S RIGHTS.** Upon default, Lender may declare the entire unpaid principal balance under this Note and all accrued unpaid interest immediately due, and then I will pay that amount.

**ATTORNEYS' FEES; EXPENSES.** Lender may hire or pay someone else to help collect this Note if I do not pay. I will pay Lender that amount. This includes, subject to any limits under applicable law, Lender's attorneys' fees and Lender's legal expenses, whether or not there is a lawsuit, including attorneys' fees, expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), and appeals. If not prohibited by applicable law, I also will pay any court costs, in addition to all other sums provided by law.

**GOVERNING LAW.** This Note will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of Mississippi without regard to its conflicts of law provisions. This Note has been accepted by Lender in the State of Mississippi.

**CHOICE OF VENUE.** If there is a lawsuit, I agree upon Lender's request to submit to the jurisdiction of the courts of Rankin County, State of Mississippi.

**RIGHT OF SETOFF.** To the extent permitted by applicable law, Lender has the full right of setoff in all my accounts with Lender (whether checking, savings, or some other account). This includes all accounts I hold jointly with someone else and all accounts I may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. I authorize Lender, to the extent permitted by applicable law, to charge or setoff all sums owing on the indebtedness against any and all such accounts, and, at Lender's option, to administratively freeze all such accounts to allow Lender to protect Lender's charge and setoff rights provided in this paragraph.

In addition to Lender's right of setoff, I hereby grant to Lender a security interest in all of my accounts with Lender (whether checking, savings or some other account, including all accounts I hold jointly with someone else and all accounts I may open in the future) to cover any debt I owe Lender, of whatever type, whether I am a borrower, guarantor or otherwise. This security interest may not apply to my account if (a) it is an

**PROMISSORY NOTE**
**(Continued)**

Loan No                                                                                           Page 2

IRA or tax-deferred Keogh Retirement Account, (b) the debt is created by a consumer credit transaction under a credit card plan, or (c) my right of withdrawal arises only in a representative capacity.

COLLATERAL. I acknowledge this Note is secured by the following collateral described in the security instruments listed herein:

(A) a Consumer Security Agreement dated August 26, 2021 made and executed between Crystal Jim and Lender on collateral described as a motor vehicle.

(B) a Consumer Security Agreement dated August 26, 2021 made and executed between Crystal Jim and Lender on collateral described as a motor vehicle.

SUCCESSOR INTERESTS. The terms of this Note shall be binding upon me, and upon my heirs, personal representatives, successors and assigns, and shall inure to the benefit of Lender and its successors and assigns.

GENERAL PROVISIONS. If any part of this Note cannot be enforced, this fact will not affect the rest of the Note. Lender may delay or forgo enforcing any of its rights or remedies under this Note without losing them. I and any other person who signs, guarantees or endorses this Note, to the extent allowed by law, waive presentment, demand for payment, and notice of dishonor. Upon any change in the terms of this Note, and unless otherwise expressly stated in writing, no party who signs this Note, whether as maker, guarantor, accommodation maker or endorser, shall be released from liability. All such parties agree that Lender may renew or extend (repeatedly and for any length of time) this loan or release any party or guarantor or collateral; or impair, fail to realize upon or perfect Lender's security interest in the collateral. All such parties also agree that Lender may modify this loan without the consent of or notice to anyone other than the party with whom the modification is made. The obligations under this Note are joint and several. This means that the words "I", "me", and "my" mean each and all of the persons signing below.

PRIOR TO SIGNING THIS NOTE, I READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS NOTE. I AGREE TO THE TERMS OF THE NOTE.

I ACKNOWLEDGE RECEIPT OF A COMPLETED COPY OF THIS PROMISSORY NOTE.

NOTICE: ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.

BORROWER:

X _____
Crystal Ann Jim

# Exhibit B

COMMUNITY BANK

## CONSUMER SECURITY AGREEMENT

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $20,172.52 | 01-04-2021 | 01-12-2025 | | 6D / 007 | | DE | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item. Any item above containing "***" has been omitted due to text length limitations.

**Grantor:** William Scott Watkins
112 McMillian Circle
Philadelphia, MS 39350-8110

**Lender:** Community Bank of Mississippi
Forest Office
323 East Third Street
Forest, MS 39074

THIS CONSUMER SECURITY AGREEMENT dated January 4, 2021, is entered into between William Scott Watkins (referred to below as "I") and Community Bank of Mississippi (referred to below as "Lender").

GRANT OF SECURITY INTEREST. To secure the Indebtedness described herein (including all obligations under the Note and this Agreement), I grant to Lender a security interest in all of the Property described below. I understand that the following statements set forth my responsibilities, as well as Lender's rights concerning the Property. I agree as follows:

PROPERTY DESCRIPTION. The word "Property" as used in this Agreement means the following described property in which I am giving to Lender a security interest for the payment of the Indebtedness and performance of all other obligations under the Note and this Agreement:

2014 Jeep Wrangler, Sport S (VIN 1C4BJWDG2EL204367)

In addition, the word "Property" also includes all the following: any and all accessions, attachments, accessories, replacements of and additions to any of the property described herein (such as tires or batteries attached to a car, a motor attached to a boat, or appliances and fixtures attached to a mobile home), whether added now or later, together with all proceeds (including insurance proceeds and refunds of insurance premiums) if any, and sums due from a third party who has damaged or destroyed the Property or from that party's insurer, whether due to judgment, settlement or other process.

Despite any other provision of this Agreement, Lender is not granted, and will not have, a nonpurchase money security interest in household goods, to the extent such a security interest would be prohibited by applicable law. In addition, if Lender is required to give notice of the right to cancel under Truth in Lending in connection with any additional loans, extensions of credit and other liabilities or obligations of me to Lender, then this Agreement shall not secure additional loans or obligations unless and until such notice and all material Truth-In-Lending disclosures are delivered.

CROSS-COLLATERALIZATION. In addition to the Note, this Agreement secures all amounts I owe to Lender, whether owed now or later. This means that every loan I have now or obtain later with Lender is secured by this Agreement. This Agreement also secures all other amounts and obligations that I may owe to Lender (such as an overdraft on a checking account). However, this Agreement shall not secure any additional loans or obligations if doing so would cause such additional loan or obligation to be subject to the limitations on consumer credit extended to service members, their spouses, and their dependents as provided in 10 U.S.C. Section 987 and its implementing regulations.

FUTURE ADVANCES. In addition to the Note, this Agreement secures all future advances made by Lender to me regardless of whether a) Lender is required by any agreement with me to extend the advance or b) the advance is made for the same purposes.

RIGHT OF SETOFF. To the extent permitted by applicable law, Lender reserves a right of setoff in all my accounts with Lender (whether checking, savings, or some other account). This includes all accounts I hold jointly with someone else and all accounts I may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. I authorize Lender, to the extent permitted by applicable law, to charge or setoff all sums owing on the Indebtedness against any and all such accounts, and, at Lender's option, to administratively freeze all such accounts to allow Lender to protect Lender's charge and setoff rights provided in this paragraph.

REPRESENTATIONS AND PROMISES WITH RESPECT TO THE PROPERTY. I represent and promise to Lender that:

Ownership. I am the lawful owner of the Property. The Property is free and clear of all loans, liens, security interests, mortgages, claims, and encumbrances except for those I have disclosed to Lender in writing prior to my signing this Agreement. I agree to defend Lender's rights in the Property against the claims and demands of all persons. I will not allow any other liens on the Property, even if they are junior to Lender's lien. I have the full authority and right to enter into this Agreement and to grant a security interest in the Property to Lender.

No Sale. Without Lender's prior written consent, I will not sell, lease, transfer, borrow against, or otherwise dispose of any of my rights in the Property unless and until all the Indebtedness is paid in full.

Location of the Property. Except for vehicles, I agree to keep the Property at my address shown above unless Lender tells me I can move it. If the Property is a vehicle, I will keep the Property at those addresses except for routine travel. I will not do anything that requires applying for a certificate of title for the vehicle in another state. If I move from my address shown above to another location within the same state, I may move the Property to my new address, but only if I give Lender the new address in writing prior to my moving. In any event, I agree to keep Lender informed at all times of my current address.

Maintenance and Insurance. I will keep the Property in good condition and repair. If the Property is damaged, lost or stolen, I immediately will inform Lender. I will keep the Property fully insured against all loss or damage by fire, theft, collision, and such other hazards as Lender may require from time to time. The insurance will be on terms, including deductible provisions and endorsements, that are satisfactory to Lender, including stipulations that coverages will not be cancelled or diminished without at least thirty (30) days prior written notice to Lender and not including any disclaimer of the insurer's liability for failure to give such notice. I understand I may obtain insurance from any insurance company I may choose that is reasonably acceptable to Lender. I will provide Lender with the original insurance policy, or other proof satisfactory to Lender of the insurance coverage, together with all endorsements required by Lender, including an endorsement naming Lender as the party to whom all losses will be paid. If Lender receives a refund of any insurance premiums, I agree that the refund is Property covered by this Agreement. Lender may apply the refund to payment of any of the Indebtedness. Any insurance policy which I deliver to Lender will be held to secure payment of the Indebtedness. Until all Indebtedness is paid in full, Lender is authorized, but shall not be required, to file any proof of loss, adjust any loss, receive and receipt for any sum payable, surrender any policy, discharge and release any insurer, endorse any loss or refund check or draft, and in general do in my name, or otherwise, any and all things with respect to the insurance or any insurance proceeds.

Licensing and Governmental Regulations. I agree to keep the Property licensed at all times as required by all applicable state and federal laws. In addition, I agree to pay when due all license fees, taxes and assessments relating to the Property or the use of the Property. I further agree that the Property will not be used for any unlawful purpose or in violation of any statute, law, ordinance, or regulation relating to the use, operation, or control of the Property.

Inspection. I agree that Lender or Lender's agents shall have the right from time to time to inspect the Property whatever located.

# CONSUMER SECURITY AGREEMENT
## (Continued)

Loan No. _____                                                                                          Page 2

regarding name changes.

**LENDER'S EXPENDITURES.** If I fail (A) to keep the Property free of all taxes, liens, security interests, encumbrances, and other claims, (B) to provide any required insurance on the Property, or (C) to make repairs to the Property then Lender may do so. If any action or proceeding is commenced that would materially affect Lender's interests in the Property, then Lender on my behalf may, but is not required to, take any action that Lender believes to be appropriate to protect Lender's interests. All expenses incurred or paid by Lender for such purposes will then bear interest at the rate charged under the Note from the date incurred or paid by Lender to the date of repayment by me. All such expenses will become a part of the indebtedness and, at Lender's option, will (A) be payable on demand; (B) be added to the balance of the Note and be apportioned among and be payable with any installment payments to become due during either (1) the term of any applicable insurance policy; or (2) the remaining term of the Note; or (C) be treated as a balloon payment which will be due and payable at the Note's maturity. The Agreement also will secure payment of these amounts. The rights provided for in this paragraph shall be in addition to any other rights or any remedies to which Lender may be entitled on account of any default. Any such action by Lender shall not be construed as curing the default so as to bar Lender from any remedy that it otherwise would have had.

**DEFAULT.** I will be in default if any of the following happens:

**Payment Default.** I fail to make any payment when due under the Indebtedness.

**Break Other Promises.** I break any promise made to Lender or fail to perform promptly at the time and strictly in the manner provided in this Agreement or in any agreement related to this Agreement.

**False Statements.** Any representation or statement made or furnished to Lender by me or on my behalf under this Agreement or the Related Documents is false or misleading in any material respect, either now or at the time made or furnished.

**Death or Insolvency.** I die or become incompetent or insolvent, a receiver is appointed for any part of my property, I make an assignment for the benefit of creditors, or any proceeding is commenced either by me or against me under any bankruptcy or insolvency laws.

**Taking of the Property.** Any creditor or governmental agency tries to take any of the Property or any other of my property in which Lender has a lien. This includes taking of, garnishing of or levying on my accounts with Lender. However, if I dispute in good faith whether the claim on which the taking of the Property is based is valid or reasonable, and if I give Lender written notice of the claim and furnish Lender with monies or a surety bond satisfactory to Lender to satisfy the claim, then this default provision will not apply.

**Defective Collateralization.** This Agreement or any of the Related Documents ceases to be in full force and effect (including failure of any collateral document to create a valid and perfected security interest or lien) at any time and for any reason.

**Property Damage or Loss.** The Property is lost, stolen, substantially damaged, sold, or borrowed against.

**Insecurity.** Lender in good faith believes itself insecure.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any guarantor, endorser, surety, or accommodation party of any of the Indebtedness or any guarantor, endorser, surety, or accommodation party dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any Guaranty of the Indebtedness.

**LENDER'S RIGHTS.** I may keep and use the Property so long as I am not in default under this Agreement. If I am in default, this is what Lender may do, in addition to any other rights Lender may have:

**Accelerate Indebtedness.** Lender may declare all Indebtedness immediately due and payable, without notice.

**Other Rights and Remedies.** In addition, Lender will have all the rights of a secured party under the Uniform Commercial Code and other applicable laws. This means, among other rights, that Lender may enter upon the premises at the address shown above and take the Property peaceably and sell it. Lender may also, to the extent permitted by law, enter peaceably upon other premises for the purpose of retaking the Property, and I consent to such entry. If the Property contains any goods not covered by this Agreement at the time of repossession, I agree that Lender may take such goods, provided that Lender makes reasonable efforts to return them to me after repossession. If Lender asks me to do so, I will gather the Property and make it available to Lender at a place reasonably convenient to both Lender and me.

**Application of Proceeds.** If Lender sells the Property, Lender will apply the "net proceeds" of the sale to reduce the amount owed Lender. "Net proceeds" means the sale price less the expenses of repossession, repair, sale, and as provided below, attorneys' fees and other collection expenses. I agree that, to the extent permitted by law, I will owe Lender any difference between the amount of the Indebtedness and the net proceeds Lender receives from the sale of the Property.

**Notice.** Unless the Property threatens to decline speedily in value or is of a type customarily sold on a recognized market, Lender will give me, and other persons as required by law, reasonable notice of the time and place of any public sale or of the time after which any private sale or any other intended disposition of the Property is to be made. The requirements of reasonable notice, if such notice is given at least ten (10) days before the time of the sale or disposition, except as otherwise required by applicable law.

**MISCELLANEOUS PROVISIONS.** The following miscellaneous provisions are a part of this Agreement:

**Amendments and Interpretation.** (1) What is written in this Agreement is my entire agreement with Lender concerning the Property. This Agreement may not be changed except by another written agreement between us. (2) If more than one person signs below, our obligations are joint and several. This means that the words "I", "me," and "my" mean each and every person or entity signing this Agreement, and that, if Lender brings a lawsuit, Lender may sue any one or more of us. I also understand Lender need not sue Borrower first, and Borrower need not be joined in any lawsuit. (3) The names given to paragraphs or sections in this Agreement are for convenience purposes only. They are not to be used to interpret or define the provisions of this Agreement. (4) I agree that this Agreement is the most reliable evidence of our agreements with Lender.

**Attorneys' Fees; Expenses.** I agree to pay all of Lender's costs and expenses, including Lender's attorneys' fees and Lender's legal expenses, incurred in connection with the enforcement of this Agreement. Lender may hire or pay someone else to help enforce this Agreement or to collect the Indebtedness, and I shall pay the costs and expenses of such enforcement. Costs and expenses include Lender's attorneys' fees and legal expenses whether or not there is a lawsuit, including attorneys' fees and legal expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services. I also shall pay all court costs, in addition to all other sums provided by law. This Agreement also secures all of these amounts.

**Caption Headings.** Caption headings in this Agreement are for convenience purposes only and are not to be used to interpret or define the provisions of this Agreement.

**Governing Law.** This Agreement will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of Mississippi without regard to its conflicts of law provisions. This Agreement has been accepted by Lender in the State of Mississippi.

**Choice of Venue.** If there is a lawsuit, I agree upon Lender's request to submit to the jurisdiction of the courts of Rankin County, State of Mississippi.

**Notices.** Any notice required to be given under this Agreement shall be given in writing, and shall be effective when actually delivered, when actually received by telefacsimile (unless otherwise required by law), when deposited with a nationally recognized overnight courier, or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown near the beginning of this Agreement. Any person may change his or her address for notices under this Agreement by giving formal written notice to the other person or persons, specifying that the purpose of the notice is to change the person's address. For notice purposes, I agree to keep Lender informed at all times of my current address. Unless otherwise provided or required by law, if there is more than one Grantor, any notice given by Lender to any Grantor is deemed to be notice given to all Grantors. It will be my responsibility to tell the others of all notice from Lender.

**No Waiver by Lender.** I understand Lender will not give up any of Lender's rights under this Agreement unless Lender does so in writing. The fact that Lender delays or omits to exercise any right will not mean that Lender has given up that right. If Lender does agree in writing to give up one of Lender's rights, that does not mean I will not have to comply with the other provisions of this Agreement. I also understand that if Lender consents to a request, that does not mean that I will not have to get Lender's consent again if the situation happens again. I further understand that just because Lender consents to one or more of my requests, that does not mean Lender will be required to consent to any of my future requests. I waive presentment, demand for payment, protest, and notice of dishonor.

**Severability.** If a court finds that any provision of this Agreement is not valid or should not be enforced, that fact by itself will not mean that the rest of this Agreement will not be valid or enforced. Therefore, a court will enforce the rest of the provisions of this Agreement even if a provision of this Agreement may be found to be invalid or unenforceable.

**Successors and Assigns.** Subject to any limitations stated in this Agreement on transfer of my interest, this Agreement shall be binding _____

**Time is of the Essence.** Time is of the essence in the performance of this Agreement.

**DEFINITIONS.** The following words shall have the following meanings when used in this Agreement:

**Agreement.** The word "Agreement" means this Consumer Security Agreement, as this Consumer Security Agreement may be amended or modified from time to time, together with all exhibits and schedules attached to this Consumer Security Agreement from time to time.

**Borrower.** The word "Borrower" means William Scott Watkins and includes all co-signers and co-makers signing the Note and all their successors and assigns.

**Grantor.** The word "Grantor" means William Scott Watkins.

**Guaranty.** The word "Guaranty" means the guaranty from guarantor, endorser, surety, or accommodation party to Lender, including without limitation a guaranty of all or part of the Note.

**Indebtedness.** The word "Indebtedness" means the indebtedness evidenced by the Note or Related Documents, including all principal and interest together with all other indebtedness and costs and expenses for which I am responsible under this Agreement or under any of the Related Documents. Specifically, without limitation, Indebtedness includes the future advances set forth in the Future Advances provision, together with all interest thereon and all amounts that may be indirectly secured by the Cross-Collateralization provision of this Agreement.

**Lender.** The word "Lender" means Community Bank of Mississippi, its successors and assigns. The words "successors or assigns" mean any person or company that acquires any interest in the Note.

**Note.** The word "Note" means the note or credit agreement dated January 4, 2021, in the principal amount of $20,172.52 from William Scott Watkins to Lender, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of and substitutions for the note or credit agreement.

**Property.** The word "Property" means all of my right, title and interest in and to all the Property as described in the "Property Description" section of this Agreement.

**Related Documents.** The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness.

**I HAVE READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS CONSUMER SECURITY AGREEMENT AND AGREE TO ITS TERMS. THIS AGREEMENT IS DATED JANUARY 4, 2021.**

GRANTOR:

x _____
William Scott Watkins

LaserPro, Ver. 20.3.10.007 Copr. Finastra USA Corporation 1997, 2021. All Rights Reserved. - MS  SCCFW\F13535.FC  TR-235\123  PR-205

# CERTIFICATE OF TITLE

Form # 79-002

## STATE OF MISSISSIPPI

**ORIGINAL**
TITLE TEXT
(E.G. UNIT #)

| VEHICLE IDENTIFICATION NUMBER | MAKE | YEAR | MODEL | BODY | TITLE NUMBER |
|---|---|---|---|---|---|
| 1C4BJWDG2EL204367 | JEEP | 2014 | WRANGLER U | UV | MS1968953856 |

| TITLE DATE | DATE OF FIRST SALE FOR USE NEW ONLY | NO./CYL. | NEW/USED | TYPE OF VEHICLE | ODOMETER - NO TENTHS |
|---|---|---|---|---|---|
| 06/21/2021 | | | USED | PC | 137332 ACTUAL |

**OWNER(S)**

WATKINS, WILLIAM SCOTT
112 MCMILLAN CIR
PHILADELPHIA MS 39350-8140

**1ST LIENHOLDER**

COMMUNITY BANK OF MISSISSIPPI
PO BOX 2019
BRANDON MS 39043-2019

**BRANDS**

DATE: 03/04/2021

**2ND LIENHOLDER**

DATE:

**MAIL TO**

COMMUNITY BANK OF MISSISSIPPI
PO BOX 2019
BRANDON MS 39043-2019

M90-10

LIEN SATISFACTION: THE UNDERSIGNED HOLDER OF ABOVE DESCRIBED LIEN(S) ON THE MOTOR VEHICLE DESCRIBED HEREON HEREBY ACKNOWLEDGES SATISFACTION THEREOF.

1ST LIEN _____

(LIENHOLDER)

THIS _____ DAY OF _____ 20___

BY _____

(SIGNATURE AND TITLE)

2ND LIEN _____

(LIENHOLDER)

THIS _____ DAY OF _____ 20___

BY _____

(SIGNATURE AND TITLE)

IN WITNESS WHEREOF I HAVE HEREUNTO SET MY HAND THIS

THE 21ST DAY OF JUNE 20 21

The Mississippi Department of Revenue hereby certifies that an application duly made, the person named herein is registered by this office as the lawful owner of the vehicle described except as to the liens or security interests as may subsequently be filed with the Mississippi Department of Revenue. This certificate of title is issued pursuant to the Mississippi Motor Vehicle Title Law Section 63-21-1, Mississippi Code of 1972 and subject to the provisions thereof.

**CONTROL NUMBER**

0 03190907

MISSISSIPPI DEPARTMENT OF REVENUE

VOID IF ALTERED





**CONSUMER SECURITY AGREEMENT**

| Principal | Loan Date | Maturity | | Call / Coll | | ? | Officer | Initials |
|---|---|---|---|---|---|---|---|---|
| $72,467.47 | 08-26-2021 | 01-09-2026 | | 6D / 037 | | | DE | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "*****" has been omitted due to text length limitations.

**Borrower:** Crystal Ann Jim
112 McMillan Circle
Philadelphia, MS 39350-8110

**Lender:** Community Bank of Mississippi
Forest Office
323 East Third Street
Forest, MS 39074

**Grantor:** Crystal Jim
112 McMillan Circle
Philadelphia, MS 39350

THIS CONSUMER SECURITY AGREEMENT dated August 26, 2021, is entered into among Crystal Jim (referred to below as "I"); Crystal Ann Jim (referred to below as "Borrower"; and Community Bank of Mississippi (referred to below as "Lender").

**GRANT OF SECURITY INTEREST.** To secure the indebtedness described herein (including all obligations under the Note and this Agreement), I grant to Lender a security interest in all of the Property described below. I understand that the following statements set forth my responsibilities, as well as Lender's rights concerning the Property. I agree as follows:

**PROPERTY DESCRIPTION.** The word "Property" as used in this Agreement means the following described property in which I am giving to Lender a security interest for the payment of the indebtedness and performance of all other obligations under the Note and this Agreement:

2020 DODGE RAM 1500 PU (VIN 1C6SRFJT4LN415217)

In addition, the word "Property" also includes all the following: any and all accessions, attachments, accessories, replacements of and additions to any of the property described herein (such as tires or batteries attached to a car, a motor attached to a boat, or appliances and fixtures attached to a mobile home), whether added now or later, together with all proceeds (including insurance proceeds and refunds of insurance premiums) if any, and sums due from a third party who has damaged or destroyed the Property or from that party's insurer, whether due to judgment, settlement or other process.

Despite any other provision of this Agreement, Lender is not granted, and will not have, a nonpurchase money security interest in household goods, to the extent such a security interest would be prohibited by applicable law. In addition, if Lender is required to give notice of the right to cancel under Truth in Lending in connection with any additional loans, extensions of credit and other liabilities or obligations of me to Lender, then this Agreement shall not secure additional loans or obligations unless and until such notice and all material Truth-in-Lending disclosures are delivered.

**CROSS-COLLATERALIZATION.** In addition to the Note, this Agreement secures all amounts Borrower owes to Lender, whether owed now or later. This means that every loan Borrower has now or obtains later with Lender is secured by this Agreement. This Agreement also secures all other amounts and obligations that Borrower may owe to Lender (such as an overdraft on a checking account). I may notify Lender in writing if I am no longer willing to be liable for future amounts owed by Borrower. I will still be liable for all loans to Borrower made or agreed to be made by Lender before Lender actually receives my notice, and all extensions, modifications and renewals of those loans. However, this Agreement shall not secure any additional loans or obligations if doing so would cause such additional loan or obligation to be subject to the limitations on consumer credit extended to service members, their spouses, and their dependents as provided in 10 U.S.C. Section 987 and its implementing regulations.

**FUTURE ADVANCES.** In addition to the Note, this Agreement secures all future advances made by Lender to Borrower regardless of whether a) Lender is required by any agreement with Borrower to extend the advance or b) the advance is made for the same purposes.

**WARRANTIES AND REPRESENTATIONS.** I warrant and represent to Lender that: (a) This Agreement is executed at Borrower's request and not at the request of Lender; (b) I have established adequate means of obtaining from Borrower on a continuing basis information about Borrower's financial condition; and (c) Lender has made no representations to me about Borrower or Borrower's creditworthiness.

**GRANTOR'S WAIVERS.** I waive all requirements of presentment, protest, demand, and notice of dishonor or non-payment to me, to Borrower, or to any other party to the indebtedness or the Property. Lender may do any of the following with respect to the indebtedness or any other obligation of any Borrower, without first obtaining my written consent: (A) grant any extension of time for any payment, (B) grant any renewal, (C) permit any modification of payment terms or other terms, or (D) exchange or release any Property or other security. No such act or failure to act shall affect Lender's rights against me or the Property.

**BORROWER'S WAIVERS AND RESPONSIBILITIES.** Lender need not tell Borrower about any action or inaction it takes in connection with this Agreement. Borrower assumes the responsibility for keeping informed about the Property. Borrower waives any defenses that may arise because of any action or inaction of Lender, including any failure or delay of Lender to collect on the Property. Borrower agrees to remain liable under the Note and indebtedness no matter what action Lender takes or fails to take under this Agreement.

**RIGHT OF SETOFF.** To the extent permitted by applicable law, Lender reserves a right of setoff in all my accounts with Lender (whether checking, savings, or some other account). This includes all accounts I hold jointly with someone else and all accounts I may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. I authorize Lender, to the extent permitted by applicable law, to charge or setoff all sums owing on the indebtedness against any and all such accounts, and, at Lender's option, to administratively freeze all such accounts to allow Lender to protect Lender's charge and setoff rights provided in this paragraph.

**REPRESENTATIONS AND PROMISES WITH RESPECT TO THE PROPERTY.** I represent and promise to Lender that:

**Ownership.** I am the lawful owner of the Property. The Property is free and clear of all loans, liens, security interests, mortgages, claims, and encumbrances except for those I have disclosed to Lender in writing prior to my signing this Agreement. I agree to defend Lender's rights in the Property against the claims and demands of all persons. I will not allow any other liens on the Property, even if they are junior to Lender's lien. I have the full authority and right to enter into this Agreement and to grant a security interest in the Property to Lender.

**No Sale.** Without Lender's prior written consent, I will not sell, lease, transfer, borrow against, or otherwise dispose of any of my rights in the Property unless and until the indebtedness is paid in full.

**Location of the Property.** Except for vehicles, I agree to keep the Property at my address shown above unless Lender tells me I can move it. If the Property is a vehicle, I will keep the Property at those addresses except for routine travel. I will not do anything that requires applying for a certificate of title for the vehicle in another state. If I move from my address shown above to another location within the same state, I may move the Property to my new address, but only if I give Lender the new address in writing prior to my moving. In any event, I agree to keep Lender informed at all times of my current address.

**Maintenance and Insurance.** I will keep the Property in good condition and repair. If the Property is damaged, lost or stolen, I immediately will inform Lender. I will keep the Property fully insured against all loss or damage by fire, theft, collision, and such other hazards as Lender may require from time to time. The insurance will be on terms, including deductible provisions and endorsements, that are satisfactory to Lender, including stipulations that coverages will not be cancelled or diminished without at least thirty (30) days prior written notice to Lender and not including any disclaimer of the insurer's liability for failure to give such notice. I understand I may obtain insurance from any insurance company I may choose that is reasonably acceptable to Lender. I will provide Lender with the original insurance policy, or other proof satisfactory to Lender of the insurance coverage, together with all endorsements required by Lender, including an endorsement naming Lender as the party to whom all losses will be paid. If Lender receives a refund of any insurance premiums, I agree that the refund is Property covered by this Agreement. Lender may apply the refund to payment of any of the indebtedness. Any insurance policy which I

# CONSUMER SECURITY AGREEMENT
### (Continued)

Loan No:                                                              Page 2

deliver to Lender will be held to secure payment of the Indebtedness. Until all Indebtedness is paid in full, Lender is authorized, but shall not be required, to file any proof of loss, adjust any loss, receive and receipt for any sum payable, surrender any policy, discharge and release any insurer, endorse any loss or refund check or draft, and in general do in my name, or otherwise, any and all things with respect to the insurance or any insurance proceeds.

**Licensing and Governmental Regulations.** I agree to keep the Property licensed at all times as required by all applicable state and federal laws. In addition, I agree to pay when due all license fees, taxes and assessments relating to the Property or the use of the Property. I further agree that the Property will not be used for any unlawful purpose or in violation of any statute, law, ordinance, or regulation relating to the use, operation, or control of the Property.

**Inspection.** I agree that Lender or Lender's agents shall have the right from time to time to inspect the Property wherever located.

**Financing Statements.** I authorize Lender to file a UCC financing statement, or alternatively, a copy of this Agreement to perfect Lender's security interest. At Lender's request, I additionally agree to sign all other documents that are necessary to perfect, protect, and continue Lender's security interest in the Property. I will pay all filing fees, title transfer fees, and other fees and costs involved unless prohibited by law or unless Lender is required by law to pay such fees and costs. I irrevocably appoint Lender as my attorney-in-fact to execute documents necessary to transfer title if there is a default. Lender may file a copy of this Agreement as a financing statement. I will promptly notify Lender of any change in my name or the name of any individual Grantor, any individual who is a partner for a Grantor, and any individual who is a trustee or settlor or trustor for a Grantor under this Agreement. I will also promptly notify Lender of any change to the name that appears on the most recently issued, unexpired driver's license or state-issued identification card, any expiration of the most recently issued driver's license or state-issued identification card for me or any individual for whom I am required to provide notice regarding name changes.

**LENDER'S EXPENDITURES.** If I fail (A) to keep the Property free of all taxes, liens, security interests, encumbrances, and other claims, (B) to provide any required insurance on the Property, or (C) to make repairs to the Property then Lender may do so. If any action or proceeding is commenced that would materially affect Lender's interests in the Property, then Lender on my behalf may, but is not required to, take any action that Lender believes to be appropriate to protect Lender's interests. All expenses incurred or paid by Lender for such purposes will then bear interest at the rate charged under the Note from the date incurred or paid by Lender to the date of repayment by me. All such expenses will become a part of the Indebtedness and, at Lender's option, will (A) be payable on demand; (B) be added to the balance of the Note and be apportioned among and be payable with any installment payments to become due during either (1) the term of any applicable insurance policy; or (2) the remaining term of the Note; or (C) be treated as a balloon payment which will be due and payable at the Note's maturity. The Agreement also will secure payment of these amounts. The rights provided for in this paragraph shall be in addition to any other rights or any remedies to which Lender may be entitled on account of any default. Any such action by Lender shall not be construed as curing the default so as to bar Lender from any remedy that it otherwise would have had.

**DEFAULT.** I will be in default if any of the following happens:

**Payment Default.** Borrower fails to make any payment when due under the Indebtedness.

**Break Other Promises.** Borrower or I break any promise made to Lender or fail to perform promptly at the time and strictly in the manner provided in this Agreement or in any agreement related to this Agreement.

**False Statements.** Any representation or statement made or furnished to Lender by Borrower or me on Borrower's or my behalf under this Agreement or the Related Documents is false or misleading in any material respect, either now or at the time made or furnished.

**Death or Insolvency.** Borrower or I die or become incompetent or insolvent, a receiver is appointed for any part of my property, I make an assignment for the benefit of creditors, or any proceeding is commenced either by me or against me under any bankruptcy or insolvency laws.

**Taking of the Property.** Any creditor or governmental agency tries to take any of the Property or any other of Borrower's or my property in which Lender has a lien. This includes taking of, garnishing of or levying on Borrower's or my accounts with Lender. However, if Borrower or I dispute in good faith whether the claim on which the taking of the Property is based is valid or reasonable, and if Borrower or I give Lender written notice of the claim and furnish Lender with monies or a surety bond satisfactory to Lender to satisfy the claim, then this default provision will not apply.

**Defective Collateralization.** This Agreement or any of the Related Documents ceases to be in full force and effect (including failure of any collateral document to create a valid and perfected security interest or lien) at any time and for any reason.

**Property Damage or Loss.** The Property is lost, stolen, substantially damaged, sold, or borrowed against.

**Insecurity.** Lender in good faith believes itself insecure.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any guarantor, endorser, surety, or accommodation party of any of the Indebtedness or any guarantor, endorser, surety, or accommodation party dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any Guaranty of the Indebtedness.

**LENDER'S RIGHTS.** I may keep and use the Property so long as I am not in default under this Agreement. If I am in default, this is what Lender may do, in addition to any other rights Lender may have:

**Accelerate Indebtedness.** Lender may declare all Indebtedness immediately due and payable, without notice.

**Other Rights and Remedies.** In addition, Lender will have all the rights of a secured party under the Uniform Commercial Code and other applicable law. This means, among other rights, that Lender may enter upon the premises at the address shown above and take the Property peaceably and sell it. Lender may also, to the extent permitted by law, enter peaceably upon other premises for the purpose of retaking the Property, and I consent to such entry. If the Property contains any goods not covered by this Agreement at the time of repossession, I agree that Lender may take such goods, provided that Lender makes reasonable efforts to return them to me after repossession. If Lender asks me to do so, I will gather the Property and make it available to Lender at a place reasonably convenient to both Lender and me.

**Application of Proceeds.** If Lender sells the Property, Lender will apply the "net proceeds" of the sale to reduce the amount owed Lender. "Net proceeds" means the sale price less the expenses of repossession, repair, sale, and as provided below, attorneys' fees and other collection expenses.

**Notice.** Unless the Property threatens to decline speedily in value or is of a type customarily sold on a recognized market, Lender will give me, and other persons as required by law, reasonable notice of the time and place of any public sale or of the time after which any private sale or any other intended disposition of the Property is to be made. The requirements of reasonable notice shall be met if such notice is given at least ten (10) days before the time of the sale or disposition, except as otherwise required by applicable law.

**MISCELLANEOUS PROVISIONS.** The following miscellaneous provisions are a part of this Agreement:

**Amendments and Interpretation.** (1) What is written in this Agreement is my entire agreement with Lender concerning the Property. This Agreement may not be changed except by another written agreement between us. (2) If more than one person signs below, our obligations are joint and several. This means that the words "I," "me," and "my" mean each and every person or entity signing below as Borrower, and that, if Lender brings a lawsuit, Lender may sue any one or more of us. I also understand Lender need not sue Borrower first, and that Borrower need not be joined in any lawsuit. (3) The names given to paragraphs or sections in this Agreement are for convenience purposes only. They are not to be used to interpret or define the provisions of this Agreement. (4) I agree that this Agreement is the most reliable evidence of my agreements with Lender.

**Attorneys' Fees; Expenses.** I agree to pay all of Lender's costs and expenses, including Lender's attorneys' fees and Lender's legal expenses, incurred in connection with the enforcement of this Agreement. Lender may hire or pay someone else to help enforce this Agreement, and I shall pay the costs and expenses of such enforcement. Costs and expenses include Lender's attorneys' fees and legal expenses whether or not there is a lawsuit, including attorneys' fees and legal expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services. I also shall pay all court costs, in addition to all other sums provided by law. This Agreement also secures all of these amounts.

**Caption Headings.** Caption headings in this Agreement are for convenience purposes only and are not to be used to interpret or define the provisions of this Agreement.

**Governing Law.** This Agreement will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of Mississippi without regard to its conflicts of law provisions. This Agreement has been accepted by Lender in the State of Mississippi.

**Choice of Venue.** If there is a lawsuit, I agree upon Lender's request to submit to the jurisdiction of the courts of Rankin County, State of Mississippi.

## CONSUMER SECURITY AGREEMENT
### (Continued)

| Loan No: | | Page 3 |

**Notices.** Any notice required to be given under this Agreement shall be given in writing, and shall be effective when actually delivered, when actually received by telefacsimile (unless otherwise required by law), when deposited with a nationally recognized overnight courier, or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown near the beginning of this Agreement. Any person may change his or her address for notices under this Agreement by giving formal written notice to the other person or persons, specifying that the purpose of the notice is to change the person's address. For notice purposes, I agree to keep Lender informed at all times of my current address. Unless otherwise provided or required by law, if there is more than one Grantor, any notice given by Lender to any Grantor is deemed to be notice given to all Grantors. It will be my responsibility to tell the others of the notice from Lender.

**No Waiver by Lender.** I understand Lender will not give up any of Lender's rights under this Agreement unless Lender does so in writing. The fact that Lender delays or omits to exercise any right will not mean that Lender has given up that right. If Lender does agree in writing to give up one of Lender's rights, that does not mean I will not have to comply with the other provisions of this Agreement. I also understand that if Lender does consent to a request, that does not mean that I will not have to get Lender's consent again if the situation happens again. I further understand that just because Lender consents to one or more of my requests, that does not mean Lender will be required to consent to any of my future requests. I waive presentment, demand for payment, protest, and notice of dishonor.

**Severability.** If a court finds that any provision of this Agreement is not valid or should not be enforced, that fact by itself will not mean that the rest of this Agreement will not be valid or enforced. Therefore, a court will enforce the rest of the provisions of this Agreement even if a provision of this Agreement may be found to be invalid or unenforceable.

**Successors and Assigns.** Subject to any limitations stated in this Agreement on transfer of my interest, this Agreement shall be binding upon and inure to the benefit of the parties, their successors and assigns. If ownership of the Property becomes vested in a person other than me, Lender, without notice to me, may deal with my successors with reference to this Agreement and the Indebtedness by way of forbearance or extension without releasing me from the obligations of this Agreement or liability under the Indebtedness.

**Time is of the Essence.** Time is of the essence in the performance of this Agreement.

**DEFINITIONS.** The following words shall have the following meanings when used in this Agreement:

**Agreement.** The word "Agreement" means this Consumer Security Agreement, as this Consumer Security Agreement may be amended or modified from time to time, together with all exhibits and schedules attached to this Consumer Security Agreement from time to time.

**Borrower.** The word "Borrower" means Crystal Ann Jim and includes all co-signers and co-makers signing the Note and all their successors and assigns.

**Grantor.** The word "Grantor" means Crystal Jim.

**Guaranty.** The word "Guaranty" means the guaranty from guarantor, endorser, surety, or accommodation party to Lender, including without limitation a guaranty of all or part of the Note.

**Indebtedness.** The word "Indebtedness" means the indebtedness evidenced by the Note or Related Documents, including all principal and interest together with all other indebtedness and costs and expenses for which Borrower is responsible under this Agreement or under any of the Related Documents. Specifically, without limitation, Indebtedness includes the future advances set forth in the Future Advances provision, together with all interest thereon and all amounts that may be indirectly secured by the Cross-Collateralization provision of this Agreement.

**Lender.** The word "Lender" means Community Bank of Mississippi, its successors and assigns. The words "successors or assigns" mean any person or company that acquires any interest in the Note.

**Note.** The word "Note" means the note or credit agreement dated August 26, 2021, in the principal amount of $72,467.47 from Crystal Ann Jim to Lender, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of and substitutions for the note or credit agreement.

**Property.** The word "Property" means all of my right, title and interest in and to all the Property as described in the "Property Description" section of this Agreement.

**Related Documents.** The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness.

**BORROWER AND I HAVE READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS CONSUMER SECURITY AGREEMENT AND AGREE TO ITS TERMS. THIS AGREEMENT IS DATED AUGUST 26, 2021.**

**GRANTOR:**

X _____
Crystal Jim

**BORROWER:**

X _____
Crystal Ann Jim

LaserPro, Ver. 21.1.0.202  Copr. Finastra USA Corporation 1997, 2021.  All Rights Reserved.  -  MS  R:\CFI\PL\E20.FC  TR-307615  PR-405

# CERTIFICATE OF TITLE

## STATE OF MISSISSIPPI

**ORIGINAL**

Form 78-001

| VEHICLE IDENTIFICATION NUMBER | MAKE | YEAR | MODEL | BODY | TITLE NUMBER | TITLE-TEXT (E.G. UNIT #) |
|---|---|---|---|---|---|---|
| 1C6RRFJT4LN415217 | RAM | 2020 | 1500 | PK | M90676417026 | |

| TITLE DATE | DATE OF FIRST SALE FOR USE NEW ONLY | NO CYL | NEW/USED | TYPE OF VEHICLE | ODOMETER - NO TENTHS |
|---|---|---|---|---|---|
| 10/05/2021 | 02/19/2020 | | NEW | PU | 240 ACTUAL |

**BRANDS**

**OWNER(S)**

WATKINS, WILLIAM OR CRYSTAL
112 MCMILLAN CIR
PHILADELPHIA MS 39350-8120

**1ST LIENHOLDER**                                   DATE: 08/25/2021

COMMUNITY BANK OF MISSISSIPPI
PO BOX 2019
BRANDON MS 39043-2019

**2ND LIENHOLDER**                                   DATE:

**MAIL TO**

COMMUNITY BANK OF MISSISSIPPI
PO BOX 2019
BRANDON MS 39043-2029

MT1-20

LIEN SATISFACTION: THE UNDERSIGNED HOLDER OF ABOVE DESCRIBED LIEN(S) ON THE MOTOR VEHICLE DESCRIBED HEREIN HEREBY ACKNOWLEDGES SATISFACTION THEREOF

**1ST LIEN** _____ (LIENHOLDER)     BY _____ (SIGNATURE AND TITLE)
THIS _____ DAY OF _____ 20___

**2ND LIEN** _____ (LIENHOLDER)     BY _____ (SIGNATURE AND TITLE)
THIS _____ DAY OF _____ 20___

IN WITNESS WHEREOF I HAVE HEREUNTO SET MY HAND THIS
5TH DAY OF OCTOBER 2021

The Mississippi Department of Revenue hereby certifies that an application duly made, the person named herein is registered by this office as the lawful owner of the vehicle described subject to the liens or security interests as they appear thereon, and that a Mississippi Department of Revenue Title certificate of title is issued pursuant to the Mississippi Motor Vehicle Title Law, Section 63-21-1, Mississippi Code of 1972 and subject to the provisions thereof.

**CONTROL NUMBER**
O 031 7611

**MISSISSIPPI DEPARTMENT OF REVENUE**

**VOID IF ALTERED**

Crystal Ann Jim




**COMMUNITY BANK**

## CONSUMER SECURITY AGREEMENT

| Principal | Loan Date | Maturity | Loan # | Call / Coll | | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $11,129.24 | 04-12-2021 | 04-15-2025 | | SC / Coll | | DE | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "***" has been omitted due to text length limitations.

**Borrower:** William Scott Watkins
112 McMillan Circle
Philadelphia, MS 39350-8110

**Lender:** Community Bank of Mississippi
Forest Office
323 East Third Street
Forest, MS 39074

**Grantor:** Scott Watkins
112 McMillan Circle
Philadelphia, MS 39350-8110

THIS CONSUMER SECURITY AGREEMENT dated April 12, 2021, is entered into among Scott Watkins (referred to below as "I"); William Scott Watkins (referred to below as "Borrower"); and Community Bank of Mississippi (referred to below as "Lender").

GRANT OF SECURITY INTEREST. To secure the Indebtedness described herein (including all obligations under the Note and this Agreement), I grant to Lender a security interest in all of the Property described below. I understand that the following statements set forth my responsibilities, as well as Lender's rights concerning the Property. I agree as follows:

PROPERTY DESCRIPTION. The word "Property" as used in this Agreement means the following described property in which I am giving to Lender a security interest for the payment of the Indebtedness and performance of all other obligations under the Note and this Agreement:

2021 Polaris A21HEA57A1 ATV [VIN 4XASEA57AMA714591]

In addition, the word "Property" also includes all the following: any and all accessions, attachments, accessories, replacements of and additions to any of the property described herein (such as tires or batteries attached to a car), a motor attached to a boat, or appliances and fixtures attached to a mobile home), whether added now or later, together with all proceeds (including insurance proceeds and refunds of insurance premiums) if any, and sums due from a third party who has damaged or destroyed the Property or from that party's insurer, whether due to judgment, settlement or other process.

Despite any other provision of this Agreement, Lender is not granting, and will not have, a nonpurchase money security interest in household goods, to the extent such a security interest would be prohibited by applicable law. In addition, if Lender is required to give notice of the right to cancel under Truth in Lending in connection with any additional loans, extensions of credit and other liabilities or obligations of me to Lender, then this Agreement shall not secure additional loans or obligations unless and until such notice and all material Truth-in-Lending disclosures are delivered.

CROSS-COLLATERALIZATION. In addition to the Note, this Agreement secures all amounts Borrower owes to Lender, whether owed now or later. This means that every loan Borrower has now or obtains later with Lender is secured by this Agreement. This Agreement also secures all other amounts and obligations that Borrower may owe to Lender (such as an overdraft on a checking account). I may hereby Lender in writing if I am no longer willing to be liable for future amounts owed by Borrower. I will still be liable for all loans to Borrower made or agreed to be made by Lender before Lender actually receives my notice, and all extensions, modifications and renewals of those loans. However, this Agreement shall not secure any additional loans or obligations if doing so would cause this loan to be subject to the limitations of the consumer credit provisions in 10 U.S.C. Section 987 and its implementing regulations.

FUTURE ADVANCES. In addition to the Note, this Agreement secures all future advances made by Lender to Borrower regardless of whether (i) Lender is required by any agreement with Borrower to extend the advance or (ii) the advance is made for the same purposes.

WARRANTIES AND REPRESENTATIONS. I warrant and represent to Lender that: (a) This Agreement is executed at Borrower's request and not at the request of Lender; (b) I have established adequate means of obtaining from Borrower on a continuing basis information about Borrower's financial condition; and (c) Lender has made no representations to me about Borrower or Borrower's creditworthiness.

GRANTOR'S WAIVERS. I waive all requirements of presentment, protest, demand, and notice of dishonor or non-payment to me, to Borrower, or to any other party to the Indebtedness or the Property. Lender may do any of the following with respect to the Indebtedness or any other obligation of any Borrower, without first obtaining my written consent: (A) grant any extension of time for any payment, (B) grant any renewal, (C) permit any modification of payment terms or other terms, or (D) exchange or release any Property or other security. No such act or failure to act shall affect Lender's rights against me or the Property.

BORROWER'S WAIVERS AND RESPONSIBILITIES. Lender need not tell Borrower about any action or inaction it takes in connection with this Agreement. Borrower assumes the responsibility for keeping informed about the Property. Borrower waives any defenses that may arise because of any action or inaction of Lender, including any failure or delay of Lender to collect on the Property. Borrower agrees to remain liable under the Note and Indebtedness no matter what action Lender takes or fails to take under this Agreement.

RIGHT OF SETOFF. To the extent permitted by applicable law, Lender reserves a right of setoff in all my accounts with Lender (whether checking, savings, or some other account). This includes all accounts I hold jointly with someone else and all accounts I may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts, for which setoff would be prohibited by law. I authorize Lender, to the extent permitted by applicable law, to charge or setoff all sums owing on the Indebtedness against any and all such accounts, and, at Lender's option, to administratively freeze all such accounts to allow Lender to protect Lender's charge and setoff rights provided in this paragraph.

REPRESENTATIONS AND PROMISES WITH RESPECT TO THE PROPERTY. I represent and promise to Lender that:

Ownership. I am the lawful owner of the Property. This Property is free and clear of all loans, liens, security interests, mortgages, claims and encumbrances except for those I have disclosed to Lender in writing prior to my signing this Agreement. I agree to defend Lender's rights in the Property against the claims and demands of all persons. I will not allow any other liens on the Property, even if they are junior to Lender's claim. I have the first authority and right to enter into this Agreement and to grant a security interest in the Property to Lender.

No Sale. Without Lender's prior written consent, I will not sell, lease, transfer, or otherwise dispose of any of my rights in the Property unless and until all the Indebtedness is paid in full.

Location of the Property. Except for vehicles, I agree to keep the Property at my address shown above unless Lender tells me I can move it. If the Property is a vehicle, I will keep the Property at the same address except for routine travel. I will not do anything that requires applying for a certificate of title for the vehicle in another state. If I move from my address shown above to another location within the same state, I may move the Property to my new address, but only if I give Lender the new address in writing prior to my moving. In any event, I agree to keep Lender informed at all times of my current address.

Maintenance and Insurance. I will keep the Property in good condition and repair. If the Property is damaged, lost or stolen, I immediately will inform Lender. I will keep the Property fully insured against loss or damage by fire, collision, and such other hazards as Lender may require from time to time. The insurance will be on form, amount, deductible provisions and company acceptable to Lender, and will not be canceled or diminished without at least thirty (30) days' prior written notice to Lender, including stipulations that coverages will not be canceled or diminished without at least thirty (30) days' prior written notice to Lender and not including any disclaimer of the insurer's liability for failure to give such notice. I understand I may obtain insurance from any insurance company I may choose that is reasonably acceptable to Lender. I will provide Lender with the original insurance policy, or any other proof satisfactory to Lender of the insurance coverage, together with all endorsements required by Lender, including an endorsement naming Lender as the party to whom all losses will be paid. If Lender receives a refund of any insurance premiums, I agree that the refund is Property covered by this Agreement. Lender may apply the refund to payment of any of the Indebtedness. Any insurance policy which I

## CONSUMER SECURITY AGREEMENT
### (Continued)

Loan No.

deliver to Lender will be held to secure payment of the Indebtedness. Until all Indebtedness is paid in full, Lender is authorized, but shall not be required, to do any proof of loss, adjust any loss, receive and receipt for any sum payable, surrender any policy, discharge and release any insurer, endorse any loss or refund check or draft, and in general do in my name, or otherwise, any and all things with respect to the insurance or any insurance proceeds.

**Existing and Governmental Regulations.** I agree to keep the Property licensed at all times as required by all applicable state and federal laws. In addition, I agree to pay when due all license fees, taxes and assessments relating to the Property or the use of the Property. I further agree that the Property will not be used for any unlawful purpose or in violation of any statute, law, ordinance, or regulation relating to the use, operation, or control of the Property.

**Inspection.** I agree that Lender or Lender's agents shall have the right from time to time to inspect the Property wherever located.

**Financing Statements.** I authorize Lender to file a UCC financing statement, or alternatively, a copy of this Agreement to perfect Lender's security interest. At Lender's request, I additionally agree to sign any other documents that are necessary to perfect, protect, and continue Lender's security interest in the Property. I will pay all filing fees, title transfer fees, and other fees and costs involved unless prohibited by law or unless Lender is required by law to pay such fees and costs. I irrevocably appoint Lender as my attorney-in-fact to execute documents necessary to transfer title if there is a default. Lender may file a copy of this Agreement as a financing statement. I will promptly notify Lender of any change to my name or the name of any individual Grantor, any individual who is a partner for a Grantor, and any individual who is a trustee or settlor or trustor for a Grantor under this Agreement. I will also promptly notify Lender of any change in the name that appears on the most recently issued, state-issued identification card, and expiration of the most recently issued driver's license or state-issued identification card for me or any individual for whom I am required to provide notice regarding name changes.

**LENDER'S EXPENDITURES.** If Lind (A) to keep the Property free of all taxes, liens, security interests, encumbrances, and other claims, (B) to provide any required insurance on the Property, or (C) to make repairs to the Property then Lender may do so. If any action or proceeding is commenced that would materially affect Lender's interests in the Property, then Lender on my behalf may, but is not required to, take any action that Lender believes to be appropriate to protect Lender's interests. All expenses incurred or paid by Lender for such purpose will then bear interest at the rate charged under the Note from the date incurred or paid by Lender to the date of repayment by me. All such expenses will become a part of the Indebtedness and, at Lender's option, will (A) be payable on demand; (B) be added to the balance of the Note and be apportioned among and be payable with any installment payments to become due during either (1) the term of any applicable insurance policy; or (2) the remaining term of the Note; or (C) be treated as a balloon payment which will be due and payable at the Note's maturity. The Agreement also will secure payment of these amounts. The rights provided for in this paragraph shall be in addition to any other rights or any remedies to which Lender may be entitled on account of any default. Any such action by Lender shall not be construed as curing the default so as to bar Lender from any remedy that it otherwise would have had.

**DEFAULT.** I will be in default if any of the following happens:

**Payment Default.** Borrower fails to make any payment when due under the Indebtedness.

**Break Other Promises.** Borrower or I break any promise made to Lender or fail to perform promptly at the time and strictly in the manner provided in this Agreement or in any agreement related to this Agreement.

**False Statements.** Any representation or statement made or furnished to Lender by Borrower or me or on Borrower's or my behalf under this Agreement or the Related Documents is false or misleading in any material respect, either now or at the time made or furnished.

**Death or Insolvency.** Borrower or I die or become incompetent or insolvent, a receiver is appointed for any part of my property, I make an assignment for the benefit of creditors, or any proceeding is commenced either by me or against me under any bankruptcy or insolvency laws.

**Taking of the Property.** Any creditor or governmental agency tries to take any of the Property or any other of Borrower's or my property in which Lender has a lien. This includes taking of, garnishing of or levying on Borrower's or my accounts with Lender. However, if Borrower or I dispute in good faith whether the claim on which the taking of the Property is based is valid or reasonable, and if Borrower or I give Lender written notice of the claim and furnish Lender with monies or a surety bond satisfactory to Lender to satisfy the claim, then this default provision will not apply.

**Defective Collateralization.** This Agreement or any of the Related Documents ceases to be in full force and effect (including failure of any collateral document to create a valid and perfected security interest or lien) at any time and for any reason.

**Property Damage or Loss.** The Property is lost, stolen, substantially damaged, sold, or borrowed against.

**Insecurity.** Lender in good faith believes itself insecure.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any guarantor, endorser, surety, or accommodation party of any of the Indebtedness or any guarantor, endorser, surety, or accommodation party dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any Guaranty of the Indebtedness.

**LENDER'S RIGHTS.** I may keep and use the Property so long as I am not in default under this Agreement. If I am in default, this is what Lender may do, in addition to any other rights Lender may have:

**Accelerate Indebtedness.** Lender may declare all Indebtedness immediately due and payable, without notice.

**Other Rights and Remedies.** In addition, Lender will have all the rights of a secured party under the Uniform Commercial Code and other applicable law. This means, among other rights, that Lender may enter upon the premises at the address shown above and take the Property peaceably and sell it. Lender may also, to the extent permitted by law, enter peaceably upon other premises for the purpose of retaking the Property, and I consent to such entry. If the Property contains any goods not covered by this Agreement at the time of repossession, I agree that Lender may take such goods, provided that Lender makes reasonable efforts to return them to me after repossession. If Lender asks me to do so, I will gather the Property and make it available to Lender at a place reasonably convenient to both Lender and me.

**Application of Proceeds.** If Lender sells the Property, Lender will apply the "net proceeds" of the sale to reduce the amount owed Lender. "Net proceeds" means the sale price less the expenses of repossession, repair, sale, and as provided below, attorneys' fees and other collection expenses.

**Notice.** Unless the Property threatens to decline speedily in value or is of a type customarily sold on a recognized market, Lender will give me, and other persons as required by law, reasonable notice of the time and place of any public sale or of the time after which any private sale or any other intended disposition of the Property is to be made. The requirements of reasonable notice shall be met if such notice is given at least ten (10) days before the time of the sale or disposition, except as otherwise required by applicable law.

**MISCELLANEOUS PROVISIONS.** The following miscellaneous provisions are a part of this Agreement:

**Amendments and Interpretation.** (1) What is written in this Agreement is my entire agreement with Lender concerning the Property. This Agreement may not be changed except by another written agreement between us. (2) If more than one person signs below, our obligations are joint and several. This means that the words "I," "me," and "my" mean each and every person or entity signing this Agreement, and that, if Lender brings a lawsuit, Lender may sue any one or more of us. I also understand Lender need not sue Borrower first, and that Borrower need not be joined in any lawsuit. (3) The names given to paragraphs or sections in this Agreement are for convenience purposes only. They are not to be used to interpret or define the provisions of this Agreement. (4) I agree that this Agreement is the most reliable evidence of my agreements with Lender.

**Attorneys' Fees; Expenses.** I agree to pay all of Lender's costs and expenses, including Lender's attorneys' fees and Lender's legal expenses, incurred in connection with the enforcement of this Agreement. Lender may hire or pay someone else to help enforce this Agreement, and I shall pay the costs and expenses of such enforcement. Costs and expenses include Lender's attorneys' fees and legal expenses whether or not there is a lawsuit, including attorneys' fees and legal expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), and any anticipated post-judgment collection services. I also shall pay all court costs, in addition to all other sums provided by law. This Agreement also secures all of these amounts.

**Caption Headings.** Caption headings in this Agreement are for convenience purposes only and are not to be used to interpret or define the provisions of this Agreement.

**Governing Law.** This Agreement will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of Mississippi without regard to its conflicts of law provisions. This Agreement has been accepted by Lender in the State of Mississippi.

**Choice of Venue.** If there is a lawsuit, I agree upon Lender's request to submit to the jurisdiction of the courts of Rankin County, State of Mississippi.

Loan No                              CONSUMER SECURITY AGREEMENT                              Page 3
                                              (Continued)

Notices. Any notice required to be given under this Agreement shall be given in writing, and shall be effective when actually delivered, when actually received by telefacsimile (unless otherwise required by law), when deposited with a nationally recognized overnight courier, or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown near the beginning of this Agreement. Any person may change his or her address for notices under this Agreement by giving formal written notice to the other person or persons, specifying that the purpose of the notice is to change the person's address. For notice purposes, I agree to keep Lender informed at all times of my current address. Unless otherwise provided or required by law, if there is more than one Grantor, any notice given by Lender to any Grantor is deemed to be notice given to all Grantors. It will be my responsibility to tell the others of the notice from Lender.

No Waiver by Lender. Lender shall not give up any of Lender's rights under this Agreement unless Lender does so in writing. The fact that Lender delays or omits to exercise any right will not mean that Lender has given up that right. If Lender does agree in writing to give up one of Lender's rights, that does not mean I will not have to comply with the other provisions of this Agreement. I also understand that if Lender does consent to a request, that does not mean that I will not have to get Lender's consent again if the situation happens again. I further understand that just because Lender consents to one or more of my requests, that does not mean Lender will be required to consent to any of my future requests. I waive presentment, demand for payment, protest, and notice of dishonor.

Severability. If a court finds that any provision of this Agreement is not valid or should not be enforced, that fact by itself will not mean that the rest of this Agreement will not be valid or enforced. Therefore, a court will enforce the rest of the provisions of this Agreement even if a provision of this Agreement may be found to be invalid or unenforceable.

Successors and Assigns. Subject to any limitations stated in this Agreement on transfer of my interest, this Agreement shall be binding upon and inure to the benefit of the parties, their successors and assigns. If ownership of the Property becomes vested in a person other than me, Lender, without notice to me, may deal with my successors with reference to this Agreement and the Indebtedness by way of forbearance or extension without releasing me from the obligations of this Agreement or liability under the Indebtedness.

Time is of the Essence. Time is of the essence in the performance of this Agreement.

DEFINITIONS. The following words shall have the following meanings when used in this Agreement:

Agreement. The word "Agreement" means this Consumer Security Agreement, as this Consumer Security Agreement may be amended or modified from time to time, together with all exhibits and schedules attached to this Consumer Security Agreement from time to time.

Borrower. The word "Borrower" means William Scott Watkins and includes all co-signers and co-makers signing the Note and all their successors and assigns.

Grantor. The word "Grantor" means Scott Watkins.

Guaranty. The word "Guaranty" means the guaranty from guarantor, endorser, surety, or accommodation party to Lender, including without limitation a guaranty of all or part of the Note.

Indebtedness. The word "Indebtedness" means the indebtedness evidenced by the Note or Related Documents, including all principal and interest together with all other indebtedness and costs and expenses for which Borrower is responsible under this Agreement or under any of the Related Documents. Specifically, without limitation, Indebtedness includes the future advances set forth in the Future Advances provision, together with all interest thereon and all amounts that may be indirectly secured by the Cross-Collateralization provision of this Agreement.

Lender. The word "Lender" means Community Bank of Mississippi, its successors and assigns. The words "successors or assigns" mean any person or company that acquires any interest in the Note.

Note. The word "Note" means the note or credit agreement dated April 12, 2021, in the principal amount of $11,129.24 from William Scott Watkins to Lender, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of and substitutions for the note or credit agreement.

Property. The word "Property" means all of my right, title and interest in and to all the Property as described in the Property Description section of this Agreement.

Related Documents. The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness.

BORROWER AND I HAVE READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS CONSUMER SECURITY AGREEMENT AND AGREE TO ITS TERMS. THIS AGREEMENT IS DATED APRIL 12, 2021.

GRANTOR:

X _____
  Scott Watkins

BORROWER:

X _____
  William Scott Watkins



# CERTIFICATE OF TITLE

## STATE OF MISSISSIPPI

**ORIGINAL**

Form 78-007

TITLE TEXT (E.G. UNIT #)

| VEHICLE IDENTIFICATION NUMBER | MAKE | YEAR | MODEL | BODY | TITLE NUMBER |
|---|---|---|---|---|---|
| 4XASEA570MA185810 | POBS | 2021 | SPORTSMAN | ATV | 180787705600 |

| TITLE DATE | DATE OF FIRST SALE FOR USE NEW ONLY | NO. CYL | NEW/USED | TYPE OF VEHICLE | ODOMETER - NO TENTHS |
|---|---|---|---|---|---|
| 05/05/2021 | 04/10/2021 | | NEW | ATV | EXEMPT |

**BRANDS**

**OWNER(S)**

WATKINS, SCOTT
11 MCMILLAN CIR
PHILADELPHIA MS 39350-8110

**1ST LIENHOLDER**                                        DATE: 05/10/2021

COMMUNITY BANK OF MISSISSIPPI
PO BOX 59
FOREST MS 39074-0059

**2ND LIENHOLDER**                                        DATE:

**MAIL TO**

COMMUNITY BANK OF MISSISSIPPI
PO BOX 59
FOREST, MS 39074-0059

LIEN SATISFACTION: THE UNDERSIGNED HOLDER OF ABOVE DESCRIBED LIEN(S) ON THE MOTOR VEHICLE DESCRIBED HEREON HEREBY ACKNOWLEDGES SATISFACTION THEREOF.

**1ST LIEN**                                         BY
THIS _____ DAY OF _____ 20 ___    (LIENHOLDER)    (SIGNATURE AND TITLE)

**2ND LIEN**                                         BY
THIS _____ DAY OF _____ 20 ___    (LIENHOLDER)    (SIGNATURE AND TITLE)

IN WITNESS WHEREOF, I HAVE HEREUNTO SET MY HAND THIS

THE 5TH DAY OF MAY 19 21

The Mississippi Department of Revenue hereby certifies that on application duly made, the person named herein is registered by this office as the lawful owner of the vehicle described and that particulars of security interests have been recorded according to Mississippi Department of Revenue records and that a title is issued pursuant to the Mississippi Motor Vehicle Title Law, 63-21, of Mississippi Code of 1972 and subject to the provisions thereof.

CONTROL NUMBER

O 030555333

**MISSISSIPPI DEPARTMENT OF REVENUE**

**VOID IF ALTERED**



# CERTIFICATE OF TITLE

**STATE OF MISSISSIPPI**

**ORIGINAL**

Form

| VEHICLE IDENTIFICATION NUMBER | MAKE | YEAR | MODEL | BODY | TITLE NUMBER | TITLE TEXT (E.G. UNIT #) |
|---|---|---|---|---|---|---|
| 3FA6P0HD4HR403767 | FORD | 2017 | FUSION | 4D X | MS153709952 | |

| TITLE DATE | DATE OF FIRST SALE FOR USE NEW ONLY | NO. CYL | NEW/USED | TYPE OF VEHICLE | ODOMETER - NO TENTHS |
|---|---|---|---|---|---|
| | 02/08/2018 | | NEW | PC | 26 ACTUAL |

**OWNER(S)**

DIX CRYSTAL A
11 MCMILLAN CIR
PHILADELPHIA MS 39350-8010

**BRANDS**

**1ST LIENHOLDER**     DATE: 02/08/2018

COMMUNITY BANK OF MISSISSIPPI
PO BOX 2019
BRANDON MS 39043-2019

**2ND LIENHOLDER**     DATE:

**MAIL TO**

COMMUNITY BANK OF MISSISSIPPI
PO BOX 2019
BRANDON MS 39043-2019

LIEN SATISFACTION: THE UNDERSIGNED LIENHOLDER ABOVE DESCRIBED LIEN(S) ON THE MOTOR VEHICLE DESCRIBED HEREIN HEREBY ACKNOWLEDGES SATISFACTION THEREOF

**1ST LIEN**     LIENHOLDER     BY
THIS_____ DAY OF_____ 20____     (SIGNATURE AND TITLE)

**2ND LIEN**     LIENHOLDER     BY
THIS_____ DAY OF_____ 20____     (SIGNATURE AND TITLE)

IN WITNESS WHEREOF I HAVE HEREUNTO SET MY HAND THIS
THE 10TH DAY OF APRIL 2018

The Mississippi Department of Revenue hereby certifies that on
application duly made, the person named herein is registered by
this office as the lawful owner of the vehicle described, subject
to any security interests as may appear thereon. The
Mississippi Department of Revenue this certificate is
issued pursuant to the Mississippi Motor Vehicle Title
63-21-1, Mississippi Code of 1972 and subject to the provisions
thereof.

**CONTROL NUMBER**
O 003 57 2

**MISSISSIPPI DEPARTMENT OF REVENUE**

**VOID IF ALTERED**



William Watkins

# CERTIFICATE OF TITLE

Form # 78-001

## STATE OF MISSISSIPPI

**ORIGINAL**

TITLE TEXT (E.G. UNIT #)

| VEHICLE IDENTIFICATION NUMBER | MAKE | YEAR | MODEL | BODY | TITLE NUMBER |
|---|---|---|---|---|---|
| 2C3CCAAG3ME538073 | CHRY | 2021 | 300 | SD | MS0209827328 |

| TITLE DATE | DATE OF FIRST SALE FOR USE NEW ONLY | NO. CYL | NEW/USED | TYPE OF VEHICLE | ODOMETER - NO TENTHS |
|---|---|---|---|---|---|
| 08/18/2021 | 07/29/2021 | | NEW | PC | /100 ACTUAL |

**OWNER(S)**

WATKINS, WILLIAM OR CRYSTAL
112 MCMILLAN CIR
PHILADELPHIA MS 39350-8110

**BRANDS**

**1ST LIENHOLDER**                                         DATE: 07/29/2021

COMMUNITY BANK OF MISSISSIPPI
PO BOX 2019
BRANDON MS 39043-2019

**2ND LIENHOLDER**                                        DATE:

**MAIL TO**

COMMUNITY BANK OF MISSISSIPPI
PO BOX 2019
BRANDON MS 39043-2019

N55-2

LIEN SATISFACTION: THE UNDERSIGNED HOLDER OF ABOVE DESCRIBED LIEN(S) ON THE MOTOR VEHICLE DESCRIBED HEREON HEREBY ACKNOWLEDGES SATISFACTION THEREOF.

| 1ST LIEN | | BY |
|---|---|---|
| | (LIENHOLDER) | (SIGNATURE AND TITLE) |
| THIS ___ DAY OF ___ 20 ___ | | |

| 2ND LIEN | | BY |
|---|---|---|
| | (LIENHOLDER) | (SIGNATURE AND TITLE) |
| THIS ___ DAY OF ___ 20 ___ | | |

IN WITNESS WHEREOF I HAVE HEREUNTO SET MY HAND THIS
**18TH** DAY OF **AUGUST** 20 **21**

The Mississippi Department of Revenue hereby certifies that an application duly made, the person named hereon is registered by this office as the lawful owner of the vehicle described above, and the liens or security interests of any holder(s) duly filed with the Mississippi Department of Revenue, this certificate of title is issued pursuant to the Mississippi Motor Vehicle Title Law Section 63-21-1, Mississippi Code of 1972, and subject to the provisions thereof.

CONTROL NUMBER
0 033386

MISSISSIPPI DEPARTMENT OF REVENUE

**VOID IF ALTERED**

William Scott Watkins